[No. 1401.]

TRENMOR COFFIN, Plaintiff and Appellant, *v.* L. H. BELL and WILLIAM KINNEY, Defendants and Respondents.

1—Summons—Constructive Service of.—Where a constructive service of a summons is relied upon to sustain a judgment, a strict compliance with the provisions of the statute is required; otherwise the court obtains no jurisdiction over the defendant.

2—Summons—Second Service of.—A void service of a summons does not preclude another and perfect service of the same; and the fact of the summons having been returned and filed does not prevent its being withdrawn and properly served.

3—Alias Summons.—Right to issue questioned, but not decided.

4—Summons—Publication of—Order for.—The order for publication of summons must succeed, not precede, the issuance of the summons.

5—Judgment—Right to Attack.—As the successor in interest to the owner, the purchaser from such owner of property sold to another under an execution issued on a voidable judgment against such owner, has a right to attack the judgment on the ground of lack of jurisdiction in the court rendering the judgment, and such attack is a direct and not a collateral one.

APPEAL from the District Court, Ormsby county, from order denying motion for a new trial; *Richard Rising*, District Judge:

On December 14, 1892, the defendant Bell commenced an action in the district court of Ormsby county against Mrs. C. R. Goddard to recover a money judgment upon an account. At the same time he issued an attachment, which was duly levied upon the property in dispute in this action, a piece of real estate in Carson City.

In *Bell* v. *Goddard* summons was issued, and served on the defendant in the state of California, but no affidavit or order for the publication of summons was made. January 28, 1893, upon this service, judgment by default was entered, as prayed in the complaint, execution was issued, and the property sold thereunder by the defendant Kinney, as sheriff of said county, to defendant Bell. July 19, 1893, without vacating that judgment, or withdrawing the summons from the files, Bell made an affidavit for publication of the summons, in which he stated that the summons had been issued December 14, 1892. On the same day an order was made accordingly, in which it was stated that, "it further appearing that a summons has been duly issued out of said court in this action, * * * it is ordered that the service of the summons in this action be made upon the defendant, Mrs. C. R. Goddard, by publication," etc. July 21, 1893, what is called an "alias summons" was issued, which was a copy of the first, except that the first said nothing about the costs, while the alias stated that the action was also brought to recover costs of suit, and notified her that, if she failed to answer the complaint, the plaintiff would also take judgment against her for his costs of suit. The alias summons was served upon her in the state of California, and on October 21, 1893, judgment was again entered against her by default, and the property again sold to Bell upon execution thereunder.

February 14, 1893, the plaintiff in this action purchased the property from Mrs. Goddard, and June 30, 1893, began this action to quiet his title thereto as against the first judgment and sale, and to restrain the sheriff from executing any deed to Bell. In their answer herein the defendants admitted the invalidity of the first judgment, but alleged their attachment lien, and that they were then engaged in obtain-

ing a second service of summons upon Goddard; and by supplemental answer, filed February 1, 1894, they set up the second judgment, and the sale thereunder. Judgment was rendered for the defendants for costs, and the plaintiff appeals.

*Trenmor Coffin*, in *pro. per.*, and *H. F. Bartine*, for Appellant:

The failure of Bell to make the necessary affidavit and obtain an order of publication before serving Mrs. Goddard with the summons, was an irregularity which made the judgment voidable, but not absolutely void. (Freeman on Judgments, 4th ed., sec. 116; Drake on Attachment, sec. 447-8, and authorities cited; *Paine* v. *Moorland*, 15 Ohio, 443; *Crowell* v. *Johnson*, 2 Neb. 146; *Zeigenhagen* v. *Doe*, 1 Ind. 296; *Beech* v. *Abbott*, 6 Vt. 586; *Matter of Clarke*, 3 Denio, 167; *Johnson* v. *Gage*, 57 Mo. 165; *Cooper* v. *Reynolds*, 10 Wall. 308; *Huff* v. *Hutchinson*, 14 How. U. S. 586; *Johnson* v. *Geilkeison*, 81 Mo. 58; *Gribbon* v. *Freed*, 93 N. Y. 93; *Gregg* v. *Thompson*, 17 Iowa, 107; *Allen* v. *Huntington*, 2 Aik. (Vt.) 249; 16 Am. Dec. 702; Work's Jurisdiction of Courts, pp. 162-5, 270-86 and authorities cited; Van Fleet's Collateral Attack, secs. 1, 61, 62, 67, 68, 213, 215, 650, 634 and authorities cited.)

When defendants, in their answer, abandoned the first judgment in *Bell* v. *Goddard*, if they had stopped there, the question whether that judgment was void or only voidable would have been immaterial, but they did not stop. The answer then proceeded to set up the attachment lien and by supplemental answer a second judgment in the cause was pleaded. By injecting this new matter the defendants assumed the affirmative, and the burden was cast upon them of proving that the attachment lien still existed, and that the second judgment was valid. In this aspect of the case the exact character of the first judgment became a matter of prime importance. If it was a complete nullity the defendant Bell had a right to ignore it, cling to his attachment lien, and get a good judgment if he could. If, on the other hand, the first judgment was a good one on its face, however defective it might be behind the record, it stands as the final judgment in the cause until it is vacated and set aside. The

second judgment pleaded is an absolute nullity, and the affirmative defense fails. See cases *supra*.

It was assumed by the court that Mrs. Goddard having been served out of the State, the forty days within which she was required to answer did not begin until full six weeks (the period of publication) had passed. The six weeks' clause in our statute applies only to cases of actual publication. Our statute upon this point is radically different from those of California, New York and Oregon. See Deering's Ann. Codes and Stats. of Cal., vol. 3; C. C. P., sec. 413; Cal. Prac. Act, 1861 (Labatt), sec. 31; Wait's N. Y. An. Code, secs. 135, 157; N. Y. Code Civ. Proc. (1877), p. 149, sec. 441; Hill's An. Laws of Oregon, vol. 1, p: 185, sec. 57. See, by way of comparison, Gen. Stats. Nev., secs. 3047, 3051, 3053; also Stats. Nev. 1861, p. 319, sec. 31 of Prac. Act.

Section 3051, Gen. Stats., is very suggestive upon this point. A California corporation, the head of which has been personally served, is expressly required to answer in forty days after such service.

But the court was in error upon this point for another reason. The judgment shows upon its face that it was not rendered until the forty-third day after service of summons. (Gen. Stats., sec. 3057.)

If the judgment was rendered before the time for answer expired, it was merely an error which does not make the judgment void. (Freeman on Judgs., 4th ed., sec. 126, and cases cited.)

Upon this particular point: *Whitwell* v. *Barbier*, 7 Cal. 63; *Lyons* v. *Cooledge*, 89 Ill. 533; *Glover* v. *Holman*, 3 Heisk. (Tenn.) 519; *Ballenger* v. *Tarbell*, 16 Iowa, 492; *Re Newman*, 75 Cal. 213; *Harnish* v. *Bramer*, 71 Cal. 159.

It is not necessary for a judgment to recite that an affidavit and order of publication have been made. Those are merely probative jurisdictional facts, and it is not essential that proofs should be recited in the judgment. The district court is one of general jurisdiction, and nothing is presumed to be outside of its jurisdiction unless it affirmatively appear to be so. The statute prescribes certain modes by which a nonresident may be served with summons. In this case the judgment recites that the defendant was " regularly " served and the affidavit of service fully sustains the recital. It is,

therefore, to be presumed that the statute was followed, otherwise the service could not have been "regular." (75 Cal. 213, 220; 71 Cal. 155; 34 Cal. 391; 94 Am. Dec. 742 and notes; 70 Tex. 394; 22 Me. 128; 8 Nev. 308; 72 Cal. 65; 77 Cal. 198; 49 Cal. 375; 39 Cal. 354; 37 Cal. 465; 65 Cal. 237–9; 57 Mo. 569; 1 Ill. App. 496; 17 Iowa, 107; 87 Ill. 365, 367; 70 Ill. 76; 80 Ill. 307; 69 Mo. 355; 68 Me. 269.)

The presumption in favor of the record is not weakened by reason of the fact that Mrs. Goddard was a non-resident. At one time some of the courts attempted to make a distinction, but it never rested upon sound principles, and the whole current of recent authority is to the effect that when the record shows that the court had acquired jurisdiction by its process, the judgment is not open to collateral attack and hence cannot be void, because if it were void it could be attacked collaterally or any other way. (Freeman on Judgs., 4th ed., p. 224; Re Newman, 75 Cal. 813; 68 Iowa, 244; 55 Iowa, 179; 97 Ind. 146; 102 Iowa, 233; 33 Kan. 609; 91 N. C. 483; 93 Mo. 524; 95 Mo. 501; 28 Fed. Rep. 36; 70 Tex. 588; 117 U. S. 255; 85 Tenn. 171; 10 Peters, 449; Work's Jurisd. of Courts, pp. 159–61, and notes and authorities.)

If it had been intended that the making of an affidavit and order of publication should appear by the record, the practice act would have constituted these documents themselves a part of the record, because this is the only way in which their *sufficiency* can be shown.

But the doctrine that there are no presumptions in favor of jurisdiction, when the defendant is a non-resident, never applied to proceedings by attachment. When property is attached, it is, in legal contemplation, in the custody of the court, and the jurisdiction to proceed and dispose of it is clear and complete. The whole line of authorities cited under the first point plainly indicates this: In attachment suits against non-residents the attachment is the foundation of the jurisdiction. In other cases the summons is the foundation. The case of *Galpin* v. *Page*, 18 Wall. 350, 85 U. S., is worthy of close consideration upon this point. See particularly the distinction between attachment proceedings and other cases adverted to on page 371. In an attachment suit against a non-resident the judgment only runs against the attached property. It is, therefore, while personal in

*form,* essentially a judgment *in rem,* and the same jurisdictional presumptions exist as in other proceedings *in rem.* (75 Cal. 213; 75 Iowa, 573; 93 N. Y. 93; *Pennoyer* v. *Neff,* 95 U. S. 714.)

In regard to the effect of jurisdictional recitals in the record of a court, a further distinction should be kept in view. When such record comes in issue, either directly or collaterally in some other state than the one in which it was rendered, it can always be contributed by showing that there was in fact no jurisdiction. But within the state the record imparts absolute verity as against a collateral attack. A careful examination of the adjudged cases will show that this distinction is sound. See, especially, *Thompson* v. *Whitman,* 18 Wall. 468.

The foregoing authorities show beyond all question that however fatal the defects in the service of summons made of them on a direct attack, the first judgment in the case of *Bell* v. *Goddard* is a good judgment *on the face of the record.* Having never been reversed, vacated or set aside it stands as the final judgment *in that cause.* (Freeman on Judgs., secs. 91, 95, 116 and cases cited.)

Only a party to the original suit can have a judgment set aside, and whether it be done by an independent action or by some appropriate proceeding in the cause, wherein it was rendered, the opposing party must have notice. (Freeman on Judgs., 4th ed., sec. 91; *Cotton* v. *McGehee,* 54 Miss. 621.)

Even where there is a fatal jurisdictional defect a district court cannot, under our practice, set aside a judgment, except as provided by the practice act, sec. 68, or on a motion for new trial. (*State* v. *First National Bank,* 4 Nev. 358; *State* v. *Dist. Court,* 16 Nev. 371.)

How absurd, then, to claim that the party recovering the judgment can vacate it at his own free will.

In the case of *Bell* v. *Goddard* there is no doubt that the service was grossly irregular, and that upon timely and proper showing made in that cause by the defendant, the judgment would be set aside. But defendant Bell was wholly responsible for those irregularities. No one placed the smallest obstacle in the way of his obtaining a valid judgment, and it is doubted if he is entitled to any relief whatever. He took such a judgment as suited him and has no reason

to complain. (Freeman on Judgs., sec. 91; *Downing* v. *Still*, 43 Mo. 309; *Montgomery* v. *Ellis*, 6 How. Prac. 326.)

His only excuse is ignorance of the law. *Ignorantia lex non excusat* is axiomatic.

This is not an action to *vacate* the judgment in *Bell* v. *Goddard*. Plaintiff is not in a position to bring such a suit. He can only attack the judgment and avoid it so far as it affects his title to the property described. He simply prays that he be adjudged the owner of the property, etc. It is in this sense only that he alleges the judgment to be void. Such an action as this he can bring, and the judgment he asks for would leave the judgment in *Bell* v. *Goddard* still standing between the parties to that suit. (*Vose* v. *Mortam*, 4 Cush. 27–30; 50 Am. Dec. 750, note, p. 754; *Downs* v. *Fuller*, 2 Met. 135; 11 Met. 370; 4 Coe. 458; 15 Cal. 127; 25 Cal. 337; 43 Cal. 83; *McMina* v. *Whelan*, 27 Cal. 300.)

The district court erred in allowing respondents to introduce proofs of the issuance of an *alias* summons, an affidavit and order of publication, the second judgment, execution and sale. After the first judgment was rendered, the court had made jurisdiction to enter a second without vacating the first. All the proceedings looking to a second judgment, and the second judgment itself, were complete nullities. There cannot be two final judgments in the same action at the same time. (Freeman on Judgs., sec. 104a; *Muckels* v. *Irwin*, 2 Neb. 60; *Morrison* v. *Chicago*, 32 N. E. 172; *Lane* v. *Kingsbury*, 11 Mo. 402; *Low* v. *Crown Point*, 2 Nev. 75.)

If the first judgment is totally void because of the fact that there was no affidavit or order, the second one is equally so because the order of publication, upon which it depends, was itself absolutely void. It directs the service of "the summons" by publication. The "summons" in the action had not only been issued, but it had been *served* and *returned*. At the time when the order was made it actually formed a part of the judgment roll in the action. It was then *functus officio*, and there was no summons in existence to which the order could apply. (*Peo.* v. *Huber*, 20 Cal. 81; *Little* v. *Currie*, 5 Nev. 90.)

The affidavit contains no statement that an alias summons had issued. In making this order the court acts judicially,

and it must get all of its information from the affidavit. (*Ricketson* v. *Richardson*, 26 Cal. 149; *Braly* v. *Hyde*, 31 Cal. 342.)

The service itself was utterly void. The order directed the publication of the summons already issued, while the summons actually served was an *alias* issued two days after the order was made.

No *alias* summons can be issued in the absence of a statutory provision allowing it. (*Cherry* v. *Mississippi Ins. Co.*, 16 Lea (Tenn.) 292; *Ensign* v. *Rogencamp*, 13 Neb. 30.)

The court below erred in reopening the case after both sides had rested and the plaintiff had closed his argument, in order to allow defendants to file a supplemental answer setting up the second judgment and subsequent proceedings. That judgment was rendered more than three months before the trial of this cause, and no attempt was made to plead it.

The first judgment being valid upon its face was a lien upon the attached property, and the attachment lien was merged in the higher lien of the judgment. When the judgment lien was lost by being abandoned, the attachment lien was also lost. (Drake on Attachment, sec. 224a; Wade on Attachment, vol. 1, sec. 29; *Bagley* v. *Ward*, 37 Cal. 121; *Porter* v. *Pico*, 55 Cal. 165; *Schieb* v. *Baldwin*, 22 How. Prac. 278; *Adler* v. *Anderson*, 42 Mo. App. 192; *Clark* v. *McDonald*, 54 N. W. 1118; *Lynch* v. *Crary*, 52 N. Y. 181; *Speelman* v. *Chaffee*, 5 Col. 247.)

Respondent Bell abandons all claim under the first judgment, while the second is an absolute nullity. So if we leave the doctrine of merger out of the case the very best position he can occupy is that of a mere attachment creditor. As such he is not in a position to attack the conveyance of his debtor's *real estate*. (27 Cal. 316; 25 Mo. 50; 3 Neb. 586; 52 Ill. 98; 18 Kan. 324; 50 N. Y. 80; Wade on Attachment, vol. 1, sec. 33.)

As a mere attachment creditor Bell has no standing in this suit. It is admitted that appellant's deed was regular and valid, and as respondents have shown no claim or title of any kind appellant should prevail.

*Torreyson & Summerfield*, for Respondents:

Appellant was a purchaser *pendente lite* with notice, and is

conclusively bound by the entire proceedings in the case of *Bell* v. *Goddard*.

Appellant is estopped from denying that the first judgment is and always was a void judgment.

Appellant in effect says: "When I have erred in my complaint that· the judgment was null and void I was only 'playing possum' to get you to admit that what I said was true," etc.

Equity declares "that he who alleges contradictory claims is not to be heard." (*Carpentier* v. *Webster*, 27 Cal. 562; *Meyer* v. *Kohn*, 29 Cal. 280; *Chaquette* v. *Orket*, 60 Cal. 594.)

Appellant, in his brief, solemnly asserts that his averment in his complaint was "merely the averment of a legal conclusion," and that he had ought not to be now estopped from "showing that the judgment was voidable only."

Granting that the averment was that of a legal conclusion only, respondents should be held justified in accepting and acting upon as true the "averment of a legal conclusion," when, to their knowledge, it was made by a lawyer of the eminence, long practical experience, and of such acknowledged learning in the law, as is the appellant in this action.

Appellant "averred" in his complaint that the judgment was null and void, but he only "claims" in his brief that it is voidable. Appellant is estopped by the record from denying the proof of his averment in the complaint, and respondents are estopped from denying the truth of their admissions solemnly made in open court at the trial. These mutual estoppels had certainly ought to establish the invalidity of the first judgment, whatever might be said about the effect in general of pleading conclusions of law. Appellant's attack upon the first judgment as being void, induced respondents to admit the truth of the attack and to abandon the first judgment. Appellant should not be heard now to attempt to reap an advantage because he induced respondents to believe him and to act upon the truth of his statements. "A man ought to be estopped from saying that to be false, which by his means has become accredited for the truth." (*Hostler* v. *Hayes*, 3 Cal. 302.)

In equity, under the operation of the plainest of the fundamental principles of estoppel, the first judgment should be held to be absolutely null and void for the purposes of this

action, even though under ordinary circumstances and conditions it would be held to be voidable, or to have been a perfect judgment which was afterwards abandoned. The first judgment was always absolutely null and void.

When constructive service is authorized by the statute in place of personal citation, the statute must be strictly pursued. (*Galpin* v. *Page*, 3 Saw. 93; *Neff* v. *Pennoyer*, 3 Saw. 374; *Pennoyer* v. *Neff*, 95 U. S. 714.)

The authorities cited by appellant on this point are not in point in this action. An examination of them shows that those decisions were based upon irregularities, or alleged irregularities, in the attachment proceedings, which were merely ancillary to the main action.

The first judgment was also void for the reason that it was prematurely entered. It requires six weeks to complete service of summons by publication which was ordered by the court, and the personal service made outside of the state was only the statutory equivalent of publication. Had the summons been published defendant Goddard would have had forty days after publication completed in which to answer. If in such cases personal service outside of the state is the equivalent of publication, the time in which to answer would begin and end at the same times as though the summons had been actually published. (*Brooklyn Trust Co.* v. *Bulmer*, 49 N. Y. 84; *Tomlinson* v. *Vechten*, 6 How. 199; *Abrahams* v. *Mitchell*, 8 Abbot's Prac. 123.)

The New York statute under which the above decisions were rendered was identical with our own, but has since been so amended that personal service, when made outside of the state, becomes a completed service at the time when it is made. Our statute has never been so amended.

Appellant claims that " the jurisdiction of the court was complete upon any theory of time." Appellant is in error. Recitals in a judgment will not control when it appears from the whole record that they are untrue. (*Collinson* v. *Teal*, 4 Saw. 241.)

Recitals in a judgment or decree of due service when the record shows differently give rise to no presumptions of jurisdiction. (*Northcutt* v. *Lemery*, 8 Or. 316.)

Appellant admits that attachment suits against non-residents are personal in form, but he says that they are essen-

tially judgments *in rem*. As a matter of fact all such judgments are purely personal, for the reason that the judgment *per se* does not affect any specific property. They are only available as a means of reaching attached property. (*Galpin* v. *Page*, 3 Saw. 93.)

It therefore follows that without a valid personal judgment against a non-resident, an attaching suitor has no legal means whereby to reach the attached property, and until he gets such valid judgment the status of the property attached remains the same as when seized.

*State* v. *National Bank*, 4 Nev. 358, and *State* v. *District Court*, 16 Nev. 371, cited by appellant, have no reference whatever to void judgments. The first has reference to erroneous judgments only, and the latter to judgments which are good but subject to the power of the court to open the default taken.

When a wise and profound lawyer, under the solemn sanctity of an oath, proclaims a judgment to be " null and void," and afterwards strenuously asserts that he was mistaken and that it was only voidable, why should not respondents, poor unwigged laymen, sometimes be mistaken?

Appellant's contentions about the invalidity of the order of publication, of the alias summons, and of the judgment based upon them are without any merit whatever. Those are questions concerning only respondent Bell and Mrs. C. R. Goddard, and do not concern appellant in the least. Mrs. C. R. Goddard has not complained of the order of publication, or of the alias summons, and she is the only one who has the right to do so. Independent of that, however, after the rendition of a judgment, which is void for defect of service, an alias summons may issue and a valid judgment be based upon its service. (*Knapp* v. *King*, 6 Or. 243.)

When it became an admitted fact that a copy of the writ of attachment, together with a description of the property attached, was on file in the recorder's office when appellant took his deed, he will not be permitted to say that he did not have full notice and knowledge of everything covered by the seventh finding of fact. The court could not have found otherwise than it did in that finding without having done violence to the entire body of the law as to the notice given by recorded instruments. It was to meet just such cases as

the one at bar that the statute provides for such recordation.

In *Hodson* v. *Tibbets*, 16 Iowa, 97, a suit was commenced and land attached. Defendants were not personally served, service being made by publication, but no proof of mailing a copy, or excuse for not doing so, appeared as required by statute. Judgment by default was taken and the attached land sold and resold by the purchaser. Afterward the defendants conveyed the land by deed, and their grantee brought action to have the judgment declared invalid, and the deeds based upon the judgment canceled. The lower court held that the judgment was null and void, but that the attachment lien was preserved. Both parties appealed. The supreme court of Iowa decided " all of the proceedings leading to the seizure of the property remain unaffected, and the parties are heard again upon the plaintiff's claim. The case is taken up just as if no judgment had been rendered; all rights depending on the preceding steps being unimpaired." Substantially to the same effect is *Seaver* v. *Fitzgerald*, 23 Cal. 86.

In conclusion respondents submit that the entire facts in this case, as disclosed by the record, show that Mrs. C. R. Goddard gave, and appellant received, the deed *mala fides*, with the intent of defeating respondents' demand and realization thereon by resort to meritless technicalities.

*Trenmor Coffin*, in *pro. per.*, and *H. F. Bartine*, for Appellant, in reply:

We have already shown in our original brief that as a mere attachment creditor respondent has no valid defense in this action.

The second point made by respondent has not a square inch of ground upon which to rest. The doctrine of estoppel has no application to the statement of legal conclusions in a pleading. If applied to this case appellant would be estopped from denying that the first judgment was absolutely void, while the respondent would in like manner be estopped from denying that it was voidable only. This would present a very curious legal situation, but it is not necessary for us to attempt to analyze it, for the case turns upon no such absurdity.

Respondents virtually admitted that the doctrines of estop-

pel do not apply to statements of legal conclusions in pleadings, but they claim that it should be in this case as against appellant, because he is a "lawyer of eminence," etc. It is a very singular argument, indeed, that the law should be varied according to the legal attainments of litigants. It is very true that neither of the respondents is a lawyer, but it should not be overlooked that their side of this case has at all times been conducted by "lawyers of eminence," etc. These gentlemen have prepared all the pleadings and framed every issue on behalf of respondents, and when they seek to screen themselves behind the ignorance of their clients, they advance an argument (?) that should not address itself very forcibly to the intelligence of this court.

It was the duty of counsel to investigate and learn for themselves the real character of the judgment in *Bell* v. *Goddard*, instead of blindly accepting the opinion of the opposite party.

The fact is that in this action both parties have shifted their positions. The only difference is that appellant has been progressive enough to get out of a wrong position into a correct one, while respondents have abandoned a position intrinsically right and assumed one that is radically wrong.

It is clear that the statute providing for constructive service must be strictly personal. It is equally clear that in this case the statute was not strictly pursued, but the *record* declared that it was. In order to prove the defective service we must go behind the record, and this marks the distinction between a judgment absolutely void and one only voidable.

When constructive service is resorted to the statute requires certain things to be done, and the omission of any one of those things is fatal. The omission of *all* that the statutes prescribes can be no more than fatal.

All of the defects which we pointed out in the order of publication—the *alias summons* and its service—appear right on the *face of the record*. The second judgment is, therefore, totally void, and can be attacked by anybody.

The case of *Wiggins et al.* v. *Henderson*, recently decided by this court, is strikingly analogous upon this point. In that case the statute required, as the foundation of the proceeding, a notice setting out a number of specific things. The notice actually filed omitted *one* of those things, and the

whole proceeding was declared void for want of judgment.

In the case of *Bell* v. *Goddard* the "summons" had been issued, served, returned, a judgment rendered, and the judgment roll made up. It was completely dead, as if it had never been. Process once served and returned is *functus*, and can only be revived by a judicial act. (*Carrigan* v. *Washburn*, 28 N. Y. S. R. 156; 9 N. Y. Sup. 541.)

In some case it has been held that the court may, by its order, allow the withdrawal of a return summons for further service, but never, we believe, in such a case as this.

This summons could not have been withdrawn for re-service without tearing the judgment roll to pieces, and not even the court had the power to order the destruction of its own *record*. But it is useless to discuss this, because no such order was made. The order directed the service of a summons that did not exist, and was utterly void.

An examination of the case of *Knapp* v. *King*, 6 Or. 243, cited by respondents, merely confirms and strengthens our opinion that no *alias summons* can be issued under the Nevada code. The Oregon statute expressly provides for the issuance of the alias and pluries summons. (Hills' An. Stats. Oregon, p. 186, sec. 59.)

The California practice act, as amended in 1875–6, is to the same effect. (Deering's An. Code Civil Proc., sec. 408.)

Originally the California statute was the same as our own, and the fact that it was deemed necessary to amend it so as to allow the issuance of an *alias* summons raises a strong presumption that the original statute gave no such right.

The whole history of the case of *Bell* v. *Goddard*, taken in connection with this one, shows that respondent Bell had obtained a judgment upon which he was entirely content to rest his title until it was attacked. Counsel say that no one but appellant ever offered an objection to that judgment. This is true, and for that reason it stands to-day as the final judgment in the case of *Bell* v. *Goddard*, and excludes the right of respondent Bell to enter another judgment until the first is set aside.

The case cited by respondent of *Seaver* v. *Fitzgerald*, 23 Cal. 86, was a case in which *personal property* had been attached and the constable was sued for the possession of it. It was claimed that the judgment was void because of irreg-

ularities in the process. The court held the judgment good; and then proceeded to say that even if it had been void the defendant would have continued to hold under the attachment.

A judgment is not a lien upon personal property, and, hence, the doctrine of merger does not apply to attachments of personality.

In the conclusion to their brief respondents accuse appellant of *mala fides*, and of trying to defeat respondents' claim by resort to meritless technicalities. This is entirely gratuitous and unsupported by anything contained in the record.

By the Court, BIGELOW, J. (after stating the facts):

Where constructive service of summons is relied upon to sustain a judgment, a strict compliance with the provisions of the statute is required (*Little* v. *Currie*, 5 Nev. 90; *Mining Co.* v. *Marsano*, 10 Nev. 370; *Victor M. & M. Co.* v. *Justice Court*, 18 Nev. 21; *Galpin* v. *Page*, 18 Wall. 350; *Guaranty Trust & Safe Deposit Co.* v. *Green Cove Springs & M. R. Co.*, 139 U. S. 137, 11 Sup. Ct. 512); otherwise the court obtains no jurisdiction over the defendant; and the want of such jurisdiction, when permitted to be shown under the rules of law concerning direct and collateral attack, is fatal to the judgment.

The question here is upon the sufficiency of the second judgment entered in the action of *Bell* v. *Goddard*. It is claimed to be fatally defective, as against the present plaintiff, upon a number of grounds, but it will only be necessary to notice one or two of them.

The affidavit and order for the publication of the summons clearly referred to the original summons which had been issued long prior thereto, and which the other directed to be published. Where publication is ordered, personal service of the summons out of the state is, by section 31 of the practice act, made equivalent to publication and deposit in the post-office; and, in accordance with this, service was made upon the defendant herein in the state of California, but not of the summons ordered to be published. When it was found that the first judgment was insufficient, proper practice would doubtless have been to vacate that judgment, withdraw the summons from the file, and serve it again. The

first service was a nullity, and, of course, would not prevent a good service from being subseqently made; nor did the fact that the summons had been returned and filed with the clerk prevent this course being taken. (*Hancock* v. *Preuss*, 40 Cal. 572.) This would have been correct, but in saying this we do not mean to decide that some other course might not also be held sufficient. But instead of this, two days after the order was made, a second summons, differing in some respects from the original, was issued and served upon Mrs. Goddard. We have no statute authorizing an alias summons, and in the only case found bearing upon the right to issue one without such authorization (*Dupuy* v. *Shear*, 29 Cal. 238, 240) it is said, though not decided, that an alias summons is not known to our system of practice. It is, however, unnecessary to decide the point here. It was held in the case last cited—a conclusion with which we agree—that, if more than one summons is authorized by the practice act, the second has no necessary connection with or dependence upon the first. It is based upon the complaint alone. We are of the opinion that, if it has any validity whatever, it stands the same as though it were the original summons in the case; and that brings us to the point that the summons which was served upon Mrs. Goddard, and which is relied upon to sustain the judgment, was not issued until two days after the order for publication was made.

In *People* v. *Huber*, 20 Cal. 81, it was held that a judgment founded upon the publication of a summons issued four days after the order for its publication was made was void. In answer to the contention that the order could be made in advance, to take effect when the summons was issued, the court said: "The practice act contemplates that the judge must be satisfied by affidavit of the absence of the defendant at the time when he is applied to for his order, and when it is to take effect. If an order might be procured in advance, and held four days before taking out of the summons, it might be held for a much longer time, and so that when the summons actually issues, the defendant may have returned to the state."

In *Little* v. *Currie*, 5 Nev. 90, the case of *People* v. *Huber* was cited and followed, this court there saying: "It [the order for publication] also directs a summons to issue. This

is not its office. The order should be that 'service be made by the publication of the summons.' Suit is commenced before the justice by the 'filing a copy of the note,' etc., 'and the issuance of a summons thereon.' The order is a direction of extraordinary manner of service, and presupposes the existence of a summons; otherwise it is premature. * * * Statutory directions for acquiring jurisdiction by any other than personal service must be strictly pursued."

In their brief, respondents' counsel contend that these are matters that only concern Mrs. Goddard, and that she is the only one that can complain of the insufficiency of the service, or of the issuance of the alias summons; but in this, we think, they are mistaken. As a purchaser from her, the plaintiff seems to occupy, as to this property, the same position that she herself would have occupied, and to have succeeded to all her rights. (*People* v. *Mullan*, 65 Cal. 396.) As her successor in interest, the action brought by him to quiet his title as against Bell's judgment, upon the ground that the court had no jurisdiction to render the judgment, is a direct, and not a collateral attack. (*Choate* v. *Spencer*, 32 Pac. 651; 17 Law Rep. 424; *Penrose* v. *McKenzie*, 116 Ind. 35; *Morrill* v. *Morrill*, 20 Or. 96; *Buchanan* v. *Bilger*, 64 Tex. 589.)

For the reason that the summons which was served upon Mrs. Goddard was not the summons ordered to be published, but one that issued two days after the order was made, we are of the opinion that the court never acquired jurisdiction over her. This was not a strict, nor even a substantial, compliance with the law. It follows that the judgment by default rendered against her is void, and the sale thereunder of the property in dispute in this action to defendant Bell gave him no title thereto.

Judgment and order refusing a new trial reversed, and cause remanded. ————