## 11366

### STATE v. SULLIVAN

#### (121 S. E., 47)

1. CRIMINAL LAW—SERVICE AT DEFENDANT'S RESIDENCE OF NOTICE OF RULE TO SHOW CAUSE WHY SUSPENDED SENTENCE SHOULD NOT BE MADE EFFECTIVE HELD SUFFICIENT.—Where a rule to show cause why a suspended sentence should not be carried into effect for a violation of the terms thereof was not served on defendant personally, but was left at his residence with a proper person, and defendant employed counsel to represent his interests at the hearing and endeavored to avoid personal service, *held,* that the service of the notice was sufficient.

2. CRIMINAL LAW—INTERPOSING OBJECTION INVOLVING MERITS WAIVER OF DEFECTIVE SERVICE OF NOTICE.—Interposing objection involving the merits of the case *held* a waiver of defendant's right to raise the objection that he had not been personally served with a copy of a rule to show cause why suspended sentence should not be carried into effect.

3. CRIMINAL LAW—EXCEPTION TO ORDER DECLARING SUSPENDED SEN-
TENCE VIOLATED HELD WITHOUT MERIT.—An exception stating that
the presiding Judge erred as a matter of law and abused his dis-
cretion in declaring a suspended sentence violated and in ordering
the same vacated, in that there was an entire failure of evidence
to support his conclusion, *held* without merit.

Before WILSON, J., Charleston, October, 1922.    Appeal
dismissed.

From an order making a suspended sentence for violation
of the dispensary laws immediately effective because of
violation of the conditions of such sentence defendant ap-
peals.

*Messrs. Logan & Grace* and *John I. Cosgrove,* for ap-
pellant, cite: *Conditional pardon:* 20 R. C. L., 574.    *Pro-
cedure for enforcement of violation of suspended sentence:*
Code Crim. Proc. 1922, Sec. 85; 1 Strob., 347; 4 Strob.,
322; 123 S. C., 28; 115 S. E., 744; 107 S. C., 417; L. R. A.,
1918C, 551; 19 S. C., 122; Code Civil Proc. 1912, Sec.
760, 761, 770.    *Rule to show cause:* 15 Enc. Pl. & Pr.,
362, 349; 95 S. C., 379.    *When Supreme Court can re-
view finding of Court below:* 115 S. E., 747; 114 S. C., 451.

*Mr. Thomas P. Stoney, Solicitor,* for the State, cites:
*Procedure in cancelling suspended sentence:* 115 S. E., 744.
*Defendant making return to rule to show cause on the merits
cannot object to jurisdiction of the Court:* 115 S. E., 744;
1 Strob., 347; 107 S. C., 413; 16 C. J., 1335, Sec. 3140.
*Nor is he entitled to trial by a jury:* 115 S. E., 744; 107
S. C., 413.    *Procedure under suspended sentence:* 107 S. C.,
345; 109 S. C., 406; 114 S. C., 445; 108 S. C., 455; 107
S. C., 413; 115 S. E., 744.

December 10, 1923.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

This is an appeal from the following order of his Honor,
Judge Wilson:

"This matter comes before me on the rule to show cause
first issued on the 26th day of September, 1922, which re-
quired that the defendant, M. S. Sullivan, do show cause
before me why the conditions of a suspended sentence for
violation of the dispensary law imposed upon the defendant
by his Honor, I. W. Bowman, of this Court, at the Febru-
ary, 1917, term of this Court, should not be vacated and such
sentence become forthwith effective. Exercising the dis-
cretion vested in me by the terms of this suspended sentence
of his Honor, Judge I. W. Bowman, I ordered that the affi-
davit upon which the motion was based and the order to
show cause be served upon the defendant personally or left
at his last known place of residence in the City of Charles-
ton, S. C. The affidavit on which the motion of Solicitor
Stoney was based was signed by Louis Poppenhem, and is
duly set forth. In the rule to show cause dated September
26, 1922, M. S. Sullivan was required to show cause before
me on Monday morning at 10 o'clock, the 2d day of October,
1922. It appears that inadvertently in this motion it was
stated that the sentence as imposed upon M. S. Sullivan was
imposed by his Honor, Judge R. Withers Memminger. It
further appears that as soon as this error was detected that
another rule to show cause was issued on the 27th day of
September, A. D. 1922, and again exercising the discretion
vested in me under the terms of the suspended sentence, I,
as Judge, ordered that a copy of the affidavit upon which
the motion was based be served upon the defendant personally
or left at his last known place of residence in the City of
Charleston. This rule was returnable on Tuesday morning,
the 3d day of October, 1922, at 10 o'clock a. m., or soon
thereafter as counsel could be heard. This matter came on
for a hearing on the afternoon of October 3, 1922. The
return of the sheriff shows that the first rule was served at
the residence of M. S. Sullivan, on Congress street, in the
City of Charleston, the same having been left with the wife
of the said M. S. Sullivan. The rule as dated September 27,

1922, by return of the sheriff, shows that the same was left at the residence of M. S. Sullivan on Congress Street with Mrs. H. Svendsen, termed by the sheriff 'a person of discretion.' Counsel for the defendant takes the position that by reason of the fact that this rule was not served personally upon M. S. Sullivan that this Court has no jurisdiction. An affidavit was duly submitted by the Solicitor, signed by Louis Poppenheim, setting forth that M. S. Sullivan was absenting himself from the City of Charleston for the avowed purpose of delaying the action of this Court, in so far as the same would affect him. By reference to the sentence of Judge I. W. Bowman, it was never contemplated that M. S. Sullivan could evade the findings of this Court by undertaking to absent himself from the jurisdiction of same, in order to defeat the terms and conditions of the sentence which he voluntarily accepted, and is now stopped from denying. Furthermore, no showing whatsoever was made to me as to why M. S. Sullivan could not have been in Court in person if he had desired so to do. The record is peculiarly silent on this point.

"The sentence as imposed upon the defendant by his Honor, Judge I. W. Bowman, together with the conditions thereof, is as follows:

" 'It is the judgment and sentence of the Court that the within named M. S. Sullivan be confined at hard labor upon the public works of the County of Charleston for a term of six months, or a like term at hard labor in the state penitentiary.

" 'It is further ordered and adjudged, however, that four months of the sentence herein imposed be, and the same is hereby suspended upon the conditions hereinafter imposed that is to say, upon the payment to the Clerk of the Court of said County, the sum of $150, or a service of a term of two months at hard labor on the public works of the County of Charleston or a like period at hard labor in the state penitentiary, and upon the further express condition that the

within named M. S. Sullivan shall not in any way violate any of the laws of this State, or municipal ordinances, relating to alcoholic liquors, whether of a regulative or prohibitive nature, either directly or indirectly, or through the means of any form of agency, copartnership, or any other form of method of business so designed, and shall not in any manner use, or knowingly become a party to the use of, any premises, or engage in any manner or form in any business, whereby such laws or ordinances shall be violated; and in the event that it shall be brought to the attention of the Court that such terms and conditions, or any of them, are not being observed, and the Court shall, upon an investigation thereof in such manner as shall to it seem proper, conclude that the terms and conditions as hereinabove set forth have been in whole or part violated, then the suspension of sentence as herein imposed shall thereupon immediately cease, and the within named M. S. Sullivan shall forthwith suffer and undergo the sentence of the Court as above imposed, that is to say, shall be confined at hard labor upon the public works of the County of Charleston for the remainder of said term, namely, four months, or for a like period, in like manner, in the state penitentiary.

"'[Signed] I. W. Bowman, Presiding Judge.

"'February 20, 1917.'

"After hearing testimony of the witnesses for the state, and upon careful consideration of the entire record before me the evidence being in I am satisfied that the defendant M. S. Sullivan has, since the sentence before referred to, violated the terms under which the said sentence was suspended, and that the terms and conditions of the said sentence have been violated.

"It is therefore ordered that the conditions of the sentence of this Court hereinbefore referred to be and the same are hereby vacated, and that the said sentence be and become immediately effective, that is to say, that the said defendant M. S. Sulliva be confined at hard labor on the public works

of Charleston County for a period of four months or for a like period in like manner in the state penitentiary.

"[Signed]                    JOHN S. WILSON
                    "Presiding Judge.

"Charleston, S. C., October 5, 1922."

The exceptions are as follows:

"The presiding Judge, it is respectfully submitted, erred in refusing defendant's motion to dismiss the rule herein, the error being that said rule to show cause had not been served personally on defendant, M. S. Sullivan, so that the trial Court was without jurisdiction to hear the matter or pass judgment thereon.

"The presiding Judge, it is respectfully submitted, erred as a matter of law and abused his discretion in declaring the suspended sentence violated and in ordering the same vacated; the error being that there was an entire failure of evidence to support such finding and upon which to base the order herein appealed from."

The first question that will be considered is whether the appellant had reasonable notice of the rule to show cause why the suspended portion of the sentence should not be carried into effect. The fact that the defendant employed an attorney to represent him necessarily shows that he (the appellant) had notice that the rule to show cause had been issued. It was not necessary for him to be personally served with a copy of the rule to show cause, but the notice was sufficient if he was informed that a copy of the rule to show cause was left at his residence for him, with a proper person. Furthermore, the uncontradicted testimony is to the effect that the appellant had endeavored to avoid service of a copy of the rule to show cause.

There is another reason why the appellant cannot interpose the objection that he was not personally served with a copy of the rule to show cause. The question raised by the second exception involves the merits of the case and was a waiver of the appellant's right to raise

. the objection that he had not been personally served with a copy of the rule to show cause. *Fitzgerald v. Case Co.,* 94 S. C., 54; 77 S. E., 739. *Williams v. Hatcher,* 95 S. C., 49; 78 S. E., 615. *Wichman & Son v. Fox,* 96 S. C., 469; 81 S. E., 180. *Mims v. Garvin et al.,* 106 S. C., 381; 91 S. E., 289.

3   The second exception is also without merit.

Appeal dismissed.

MESSRS. JUSTICES FRASER and MARION concur.

MESSRS. JUSTICES WATTS and COTHRAN dissent.

MR. JUSTICE FRASER (concurring): The position of the appellant in this case does not appeal to me.

I can see how a nonresident can move to set aside a service and appear for that purpose only. The idea is not that he did not know, but, being a nonresident, the Court has no jurisdiction of him and cannot acquire it that way. He can appear for that purpose only.

I can see how a person who has no notice of a proceeding against him might appear and ask the Court to open its judgment against him and show that he had no notice, either actual or constructive. It is logical to allow him to appear for the sole purpose of setting aside the service.

The object of service is to give notice, and the purpose of personal service is to be sure that the person served has actual notice. I cannot understand how it is that a person can appear in person, or by an attorney, at the time mentioned in the notice, and claim and expect to have the claim allowed, that he does not know the very facts upon which he bases his motion. He does not ask for information about the matter. He does not ask for delay to prepare his case. He says, "I am here to tell you I do not know there is any such proceeding as the one in which I appear." For these reasons I must sustain the order appealed from.

MR. JUSTICE MARION (concurring): The contention that the Court was without jurisdiction to act in the absence of personal service of notice upon the defendant is unten-

able, for the reason that for the purposes of carrying the suspended sentence into effect the jurisdiction of the Court of General Sessions had never been lost. The defendant had had his day in Court, and the Court having acquired jurisdiction to render the judgment, it had inherent authority to carry the sentence into effect. *State v. Miller* (S. C.), 115 S. E., 742. *State v. Charles,* 107 S. C., 413; 93 S. E., 134. While as a matter of sound practice I think notice of proceedings against a party charged with violating the conditions of a suspended sentence should as a general rule be personally served upon the party, the lack of such personal service does not deprive the Court of jurisdiction. Whether, under the circumstances of the particular case, the defendant is entitled as a matter of fairness and justice to the personal service of notice, is a question of fact addressed to the sound judicial discretion of the Court. Under the facts of this case, I am satisfied there was no abuse of discretion on the part of Judge Wilson, and that his order should be affirmed.

MR. JUSTICE WATTS (dissenting) : I cannot concur in the opinion of Chief Justice Gary. In my opinion the appellants should have been personally served with the rule to show cause. If he could not be found to be personally served, and proof had been presented to Judge Wilson that he had been probably guilty of violating his suspended sentence, Judge Wilson could have issued a bench warrant, and when found he could have been arrested and brought into Court; then the defendant could have answered the rule and could have been allowed to show the falsity of the charge, if he could.

This is a proceeding on the criminal side of the Court, not the civil, and the rules of service on the civil side of the Court do not govern. The defendant is entitled to be personally served, unless he waives it and appears in person. It seems to me that the same practice and procedure should prevail as to a suspended sentence imposed by the Court, as prevails in reference to a suspended sentence or conditional

pardon imposed by the Governor.    The same practice should
prevail in governing the vacation of a conditional pardon by
the Governor as to a suspended sentence imposed by a Court.

This practice and procedure has been passed upon by the
Courts of this country.    We find in 20 R. C. L. p. 574, this:

"The proceeding to test the question whether or not there
has been a violation of or noncompliance with the condition
or conditions of a pardon is purely informal.    The estab-
lish practice at the common law and in the American States,
in the absence of statutory regulation, and in the absence
from the pardon itself of expressed stipulations for that
purpose, is for some Court of general criminal jurisdiction,
upon having its attention called by affidavit or otherwise to
the effect that the pardoned convict has violated or failed to
comply with the condition or conditions of his pardon, to
issue a rule reciting the original judgment of conviction and
sentence, the pardon and its conditions, and   the alleged
violation of or noncompliance with the condition or con-
ditions thereof, and requiring the sheriff to arrest the
convict and bring him before the Court to show cause, if he
can, why the original sentence imposed upon him should not
be executed."

In this case this procedure was followed, except that the
defendant was not arrested or served personally.    Under the
rule the Court did not acquire jurisdiction of the person of
the defendant.

We find the following in *Lucero v. McManus,* 23 N. M.,
438; 168 Pac., 715, L. R. A., 1918C, p. 551:

"Upon principle it would seem that due process of law
would require notice and opportunity to be heard before a
defendant can be committed under suspended sentence.    The
suspension of the execution of the sentence gives to the de-
fendant a valuable right.    It gives to him the right of per-
sonal liberty, which is one of the highest rights of citizen-
ship.    This right cannot be taken from him without notice

and opportunity to be heard without invading his constitutional rights."

There is no doubt in my opinion that the enforcement of the conditions of a suspended sentence alleged to have been violated is in its nature criminal and not civil, and the rule as to the service of notice in a civil proceeding does not govern. I think that the attempted service was illegal, null, and void, and that the Court was without jurisdiction, and that the order of Judge Wilson should be vacated and reversed.

Mr. Justice Cothran (dissenting): I thoroughly agree with the dissent of Mr. Justice Watts, in this case; but owing to the great importance of the issue involved, I will to some extent elaborate my very pronounced convictions in the matter, with little expectation that any strength will be added to what he has so well said.

The facts are these: In February, 1917, Sullivan was under indictment in the Court of General Sessions for Charleston County, for a violation of the prohibition laws of the State then in force. Upon his trial he entered a plea of guilty, and was sentenced by the presiding Judge, Hon. I. W. Bowman, to imprisonment for a term of six months, four months of which, however, were suspended upon his payment of a fine of $150 or the service of two months' imprisonment. The suspension of the four months was conditional upon his not in any way thereafter violating the laws relating to alcoholic liquor. The sentence also contained the following provision:

"And in the event that it shall be brought to the attention of the Court that such terms and conditions, or any of them, are not being observed and the Court shall upon an investigation thereof in such manner as shall to it seem proper, conclude that the terms and conditions, as hereinabove set forth, have been in whole or in part violated," the suspension shall cease and the unserved part of the original sentence shall be put into effect.

I assume that the fine was paid and that it represented two months of the sentence leaving four months suspended upon the conditions named.

On September 27, 1922, the solicitor of the Circuit presented to the Circuit Judge presiding in the Court of General Sessions an affidavit of one Louis Poppenheim, a Federal Prohibition Officer, dated September 26, 1922, tending to show that Sullivan had violated the conditions of the suspended sentence, and asked for an order in the nature of a rule to show cause, requiring Sullivan to appear and show cause "why said conditions should not be vacated and such sentence become forthwith effective." The motion of the solicitor was granted and the rule was issued, returnable on October 3, 1922. The order directed that a copy of it and of the Poppenheim affidavit "be served upon the defendant personally, or left at his last known place of residence in the City of Charleston."

The indorsement of service by the sheriff certified "that a copy of the within indictment for violation of the dispensary law" was served upon Sullivan on September 27, 1922, by handing to and leaving the same with Mrs. H. Svendsen, "a person of discretion residing at" the residence of Sullivan.

On October 3, 1922, the matter was called up before the presiding Judge for a hearing, apparently in open Court. The record for appeal contains this statement:

"Appellant's attorney appeared specially and for the sole purpose of objecting to the jurisdiction of the Court to hear the matter, and as ground therefor alleged that the Court was without jurisdiction to hear the matter or pass judgment thereon, for the reason that the rule to show cause, upon which the State was proceeding, had not been served personally upon the defendant."

The presiding Judge overruled the objection, and ordered the case to a hearing. No return was filed by the defendant to the rule to show cause. The State then introduced cer-

tain testimony and documentary evidence tending to show that on June 23, 1922, in the waters near Charleston, a barge, towed by a gasoline launch belonging to Sullivan, containing 200 barrels of liquor, valued at $30,000, had been seized by the prohibition officers. No evidence was offered by the defendant.

On October 5, 1922, Judge Wilson signed an order in which he held that, upon the evidence submitted, the defendant had, since the sentence by Judge Bowman, violated the terms upon which the sentence was partially suspended, and decreed that Sullivan be forthwith confined for the remainder of the sentence. He also held, impliedly but not definitely, that Sullivan was absenting himself from Charleston for the avowed purpose of delaying the action of the Court.

From this order the defendant has appealed upon exceptions which raise the two questions:

(1) Did the Court obtain the necessary jurisdiction of the person of the defendant and of the subject matter of the rule, by the service of the rule to show cause, not personally upon the defendant, but in the matter stated?

(2) Was there an entire failure of evidence to support the finding of the Circuit Judge that the defendant had breached the conditions upon which the suspended sentence was to remain in force?

As to the first question: The initial inquiry in the resolution of this issue must be directed to the status which the defendant occupied with reference to the judgment of the Court. When he complied with the active portion of the sentence by the payment of the fine of $150, he was entitled to be discharged from the custody of the sheriff, and to leave the courtroom a free man; this liberty, under the terms of the sentence, was, however, to continue only so long as he complied with the conditions upon which the suspension of the remaining part of the sentence was granted. His personal liberty therefore being liable to be forfeited upon his commission of the crime referred to in the condition of the

suspension, it seems to me that upon the issue of his guilt of such crime, he stands exactly in the position of a defendant ordinarily accused except in two particulars: (1) In the mode by which his personal presence before the Court to answer to the charge shall be secured; and (2) in the proceeding, after such presence is secured, by which the issue shall be determined.

His personal liberty would be just as much at stake as that of any other person accused, and in its protection he would be equally entitled to the due process of the law, the definition of which by Mr. Webster in the Dartmouth College Case, 4 Wheat., 518, 4 L. Ed., 629, is as incapable of improvement as "to gild refined gold": "A law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." It is the bedrock of jurisprudence that no one shall be personally bound until he has had his day in Court, has been duly cited to appear, and has been afforded an opportunity to be heard. "Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is fairly administered." 6 R. C. L., 447, citing *Galpin v. Page,* 18 Wall., 350; 21 L. Ed., 959. *Hovey v. Elliott,* 167 U. S., 409; 17 Sup. Ct., 841; 42 L. Ed., 215.

In *Lucero v. McManus,* 23 N. M., 433; 168 Pac., 713, L. R. A. (N. S.), 1918C, 549, quoted by Mr. Justice Watts, it is said:

"The suspension of the execution of a sentence gives to the defendant a valuable right. It gives to him the right of personal liberty, which is one of the highest rights of citizenship. This right cannot be taken from him without notice and opportunity to be heard without invading his constitutional rights."

See, also, *State v. Burnett,* 174 N. C., 796; 93 S. E., 473, L. R. A. 1918A, 955. *State v. Burnette,* 173 N. C., 734;

91 S. E., 364. *State v. Tripp,* 168 N. C., 150; 83 S. E., 630.

It is no justification for the absence of due notice to remind one that the Court had never lost jurisdiction of the defendant or of the case. I fully agree with the declaration of Mr. Justice Marion in his concurring opinion:

"For the purpose of carrying the suspended sentence into effect the jurisdiction of the Court of General Sessions had never been lost."

For as the Court says in *State v. Abbott,* 87 S. C., 466; 70 S. E., 6; 33 L. R. A. (N. S.), 112; Ann. Cas. 1912B, 1189, which was a case of a rule to show cause why the suspension of a sentence should not be revoked:

"The rule is that jurisdiction remains in a Court to enforce its valid judgments according to law against those who are parties to them."

The condition upon which the suspension was to be revoked was as much a part of the judgment of the Court in this case as the unaffected part of the sentence; and as long as the defendant lived, the Court retained jurisdiction of the case, upon occasion to enforce the judgment which had been pronounced.

I do not at all agree with his conclusion that—

"Whether under the circumstances of the particular case the defendant is entitled as a matter of fairness and justice to the personal service of notice is a question of fact addressed to the sound  *  *  *  discretion of the Court."

I do not regard it as a matter to be determined by the judicial estimate of what is fair and just, a criterion that in time of stress, revolution, political upheaval, partisanship, or fanaticism (against the possibility of which the Court must set its face), may vary with the temper or interest of the Judge, but a legal, constitutional right, as immovable as a lighthouse on solid granite fixed.

I do not think that the Circuit Judge is vested with any discretion at all as to the mode in which the rule to show

cause is to be served upon the defendant. That is a matter of law, as to which his discretion is absolutely controlled, affecting as it does the personal rights of the defendant.

I do not think, however, that the Circuit Judge is vested with large powers of discretion in these matters: (1) As to the process by which the defendant is given notice of the issue whether or not the conditions of his suspended sentence have been breached. This may be done by a bench warrant, by which the physical presence of the defendant shall be secured; or by a rule to show cause, as was done in the present instance. The latter is the milder form, which the defendant certainly has no right to resent. (2) As to the proceeding by which the issue shall be determined: That will depend upon the circumstances of the case. If the defendant's breach of the conditions appears by the record of his conviction, the Circuit Judge may act upon the production of this record, unless the defendant shall deny his identity or allege *nul tiel* record. If it does not appear as a matter of record, but has to be determined upon an investigation of the facts, the Circuit Judge would have the right to take testimony and determine the question himself, or frame an issue to be decided by a jury, or hold the matter in abeyance until the defendant shall have been tried upon the charge. I imagine that the Circuit Judge would hesitate to take upon himself the responsibility of deciding the guilt of the defendant under these circumstances, and I think that the safest course to pursue would be to hold the matter in abeyance until a jury shall have passed upon the charge. Suppose, for instance, the defendant under a charge of murder is convicted of mansalughter, and is given a sentence of five years, three years of which are suspended upon condition that he does not commit a similar offense. In the event of a subsequent homicide committed by him, I hardly think that the Circuit Judge would attempt to decide the question whether or not the defendant was guilty of manslaughter in

the second homicide, in advance of his regular trial, at which he may be acquitted.

It is a matter of which I am not permitted, perhaps, to take judicial notice, that at a term of the Federal Court, held since the order of Judge Wilson was issued, the defendant was tried upon the identical charge contained in the affidavit of Poppenheim, the result of which trial was a mistrial. The reproachful situation is thus presented of the defendant having under the judgment of one Court to undergo punishment for a crime of which a jury in another Court has not been convinced of his guilt. Or suppose he had been acquitted, as he may be; the reproach upon the administration of justice would be more emphatic. These considerations, I think justify my opinion that it is better in all such cases to hold the rule in abeyance until the matter of the defendant's guilt upon the criminal charge shall have been judically declared.

It being established, therefore, in my opinion, that in a proceeding of this kind, the defendant was entitled, as an absolute constitutional right, to due notice of a proposed adjudication which would deprive him of his personal liberty, the question remains whether or not this right has been accorded to him by substituted, rather than personal, service of the rule to show cause.

Passing by the possible objection that the sheriff's return shows a service, not of the rule to show cause but of a copy of the indictment for violation of the dispensary law, I have not the slightest doubt that the defendant was entitled to personal service of the rule, and that the substituted service was insufficient.

The common law recognized no such thing as a constructive or substituted service. Nothing short of personal service would suffice. The provisions of the Code for substituted service are an exception to the rule, and the efficacy of such service is due to the statute, which of course has no application except in the specified cases.

In the Code of Civil Procedure, substituted service is provided for in the case of the summons, Section 390, Code of 1922, and of certain notices, Section 761; but they, of course, apply to civil and not to criminal actions. It is significant that in Section 770 "any paper to bring a party into contempt" is specifically excepted from Section 761 providing for substituted service. This is the proceeding in a civil action, nearest in nature to a criminal proceeding, and in it substituted service is not permitted. Constructive service is provided for by publication, which as to a nonresident affects only the property situated in this state; it has no personal effect. I think that the Court would have as much right to rely upon service by publication of a rule to show cause as to rely upon substituted service.

Both the proceeding by bench warrant and that by rule to show cause are intended to secure the presence of the defendant in Court. The Court would have as much right to rely upon substituted service of the bench warrant, as upon substituted service of the rule to show cause.

In the case of *State v. Barnes,* 32 S. C., 14; 10 S. E., 611; 6 L. R. A., 943; 17 Am. St. Rep., 832, the practice is recognized by serving the defendant, who is at liberty under a conditional pardon, with a rule to show cause why the condition upon which it was granted should not be adjudged to have been breached.

So in the case of *State v. Chancellor,* 1 Strob., 347; 47 Am. Dec., 557, the defendant, under similar circumstances, was arrested and brought to the bar under a bench warrant. The point decided in the case was that the defendant, having thus been brought into Court, was not entitled to a formal rule to show cause. The inference is strong that if he had not been so arrested, he was entitled to a rule to show cause personally served upon him.

And so in the cases of *State v. Smith,* 1 Bailey, 283; 19 Am. Dec., 679, and *State v. Addington,* 2 Bailey, 516; 23 Am. Dec., 150. The same practice was recognized in *State*

*v. Charles,* 107 S. C., 413; 93 S. E., 134, and *State v. Miller,* 115 S. E., 742, both of which were instances of suspended sentences.

"Service by the leaving of a copy of the process at the defendant's residence or place of abode, is exclusively a statutory proceeding, and is almost universally provided for as a method to be used in certain cases."   32 Cyc., 462; 448. *Hunter v. Hunter,* 1 Bailey, 646.   *Bowers v. Alston,* 1 Nott & McC., 458.

"In general, however, where notice is required by statute or rule of Court, and the method of serving the same is not laid down, it is understood that there shall be personal service."   Wade, Notice, § 1334.

"However, it is quite certain that though this method of service (substituted) may be very liberally viewed for some purposes, yet it is, in no instance, regarded with the same favor as service strictly personal.   So far as it is resorted to in matters of practice, it is recognized only because it is prescribed by statute, or is employed in a proceeding analogous to one where it is so authorized, and like all statutory innovations, must be strictly construed."   Wade, Notice, § 1345.   *Beamfield v. Dyer,* 7 Bush (Ky.), 505.   *Mullins v. Sparks,* 43 Miss., 129.   *Pollard v. Wegener,* 13 Wis., 569.

In *Thomas v. Thomas,* 96 Me., 223; 52 Atl., 642; 90 Am. St. Rep., 342, it is said:

"By the common law personal service was required in all actions * * * *in personam.*   In this State,   * * *   provision is made by statute for substituted or constructive service upon parties resident in the State.   Such substituted service is a departure from the common law, and the authority for it must be strictly followed"—citing *Settlemier v. Sullivan,* 97 U. S., 444; 24 L. Ed., 1110.   *Galpin v. Page,* 18 Wall., 350; 21 L. Ed., 959.

In the latter case it was held that service by publication was in derogation of the common law and that the statutory provisions authorizing it must be strictly pursued.

In *Coffin v. Bell,* 22 Nev., 169; 37 Pac., 240; 58 Am. St. Rep., 738, it is held that if constructive service is relied upon to sustain a judgment, there must have been a strict compliance with the statute. *Laney v. Garbee,* 105 Mo., 355; 16 S. W., 831; 24 Am. St. Rep., 391.

In *Beckett v. Cuenin,* 15 Colo., 281; 25 Pac., 167; 22 Am. St. Rep., 399, it is said:

"It is an established principle in all Courts that the method of acquiring jurisdiction by publication is in derogation of the common law, and that the statutory requirements must be successively and accurately taken in order to confer upon the Court jurisdiction over the defendant."

In *Frost v. Atwood,* 73 Mich., 67; 41 N. W., 96; 16 Am. St. Rep., 560, it is said:

"It was held in *Durfee v. Abbott,* 50 Mich., 278, that there is no power to dispense with personal service in any case except in cases provided for distinctly by statute."

"Personal service of a *sci. fa.* is required unless the party voluntarily submits to the jurisdiction of the Court." 6 C. J., 1062. *Grimke v. Mayrant,* 2 Brev., 202.

I do not see how it is possible to conclude that the defendant has waived any right by the appearance of his counsel. That appearance was made specifically for the purpose only of raising the objection of want of personal service. The objection was timely made and overruled; no return was made and no evidence offered. How else could the objection possibly have been raised?

The appearance of Mr. Cosgrove as attorney for Sullivan, at the hearing before Judge Wilson, is no more than could have been expected when the rule to show cause was served upon Mrs. Sullivan, or other member of the household, the threat of which was to put Sullivan on the gang. He was clearly within his rights, and acting within the law, in making the objection without waiving that for which he specifically appeared.

I think that the implied conclusion of Judge Wilson that the defendant was evading the service of the rule to show cause was without a particle of evidence to sustain it. The affidavit of Poppenheim was:

"That he is convinced that M. S. Sullivan is absenting himself from the City of Charleston for the avowed purpose of delaying the action of the Court, in so far as the same will affect him, Sullivan."

The conviction of the witness may be of interest, but it is not evidence. Not a single fact justifying that conviction is given, and not the slightest evidence shown of an attempt to find Sullivan. I doubt not that he will be found quickly if the order in this proceeding is affirmed.

As to the second question: I do not consider it necessary to discuss this question, in the view I have taken of the first.

I think, therefore, that the order should be reversed, and the rule discharged.