## UNITED STATES v. DOWLING et al. (two cases). SAME v. LINDSAY et al. SAME v. BRYAN et al.

(District Court, S. D. Florida. February 2, 1922.)

Nos. 1424, 1440–1442.

1. **Conspiracy ⟨=⟩43(6)—Indictments for conspiracy to commit offense not specifically defined held insufficient.**

Indictments under Criminal Code, § 37 (Comp. St. § 10201), charging conspiracy "to commit an offense against the United States, that is to say, to violate title 2 of the National Prohibition Act in this, to wit, that the said [defendants] would then and there possess certain intoxicating liquors, to wit [stating number of cases of liquor], contrary to the provisions of said act," without stating the kind of liquor, or otherwise alleging which of the many provisions of the Prohibition Act defendants conspired to violate, *held* insufficient, as too general and not sufficiently informing defendants of the charge they were required to meet.

2. **Conspiracy ⟨=⟩43(5)—Allegations of overt acts cannot aid indictment defective in substantive averments.**

In an indictment for conspiracy, allegations of overt acts cannot be resorted to in aid of an insufficient averment of the offense which was the object of the alleged conspiracy.

3. **Conspiracy ⟨=⟩43(6)—Indictment held not to charge an offense.**

An indictment for conspiracy to violate the National Prohibition Act by possessing "certain intoxicating liquors [stating the number of cases], contrary to the provisions of said act," without alleging any facts to show that such possession was unlawful, either on account of the time, place, or purpose of the possession, or the character of the liquor, *held* not to charge an offense.

4. **Intoxicating liquors ⟨=⟩13, 139—Mere possession of liquor not a crime.**

National Prohibition Act Oct. 28, 1919, tit. 2, § 33, does not make the mere possession of intoxicating liquor a crime, nor would a law making possession a crime be within the power conferred on Congress to legislate for the enforcement of the Eighteenth Amendment, unless for the purpose of rendering effective the prohibition of manufacture, sale, transportation, importation, or exportation contained in the amendment, and appropriate to that end.

5. **Conspiracy ⟨=⟩43(5)—Overt act must be alleged to have been done to effect object of conspiracy.**

In an indictment for conspiracy under Criminal Code, § 37 (Comp. St. § 10201), an act charged as an overt act must be alleged to have been done "to effect the object of the conspiracy," or words to that effect, and it is not sufficient to allege that it was done "pursuant to said unlawful conspiracy."

6. **Customs duties ⟨=⟩129—Rev. St. § 3082, as applied to intoxicating liquors, superseded by National Prohibition Act.**

Rev. St. § 3082 (Comp. St. § 5785), imposing a penalty for smuggling or aiding in concealing or disposing of smuggled goods, as applied to intoxicating liquors, is superseded by National Prohibition Act, tit. 2, §§ 3, 29, which prohibit the importation of such liquor, except as therein authorized, and prescribes a less severe penalty for its violation.

---

⟨=⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Intoxicating liquors ☞213—Indictment for maintaining common nuisance held insufficient.**

An indictment under National Prohibition Act Oct. 28, 1919, tit. 2, § 21, for maintaining a common nuisance, which alleged in substance that defendants, at some time and at some place within the district, did unlawfully keep ———— cases of intoxicating liquor on board a certain launch, *held* insufficient, in that it did not specify the time or place or describe the vessel or the liquor, or set forth any facts showing that the "keeping" was unlawful, or that it was kept for such time as to constitute a "maintaining," within the statute.

Criminal prosecutions by the United States against W. H. Dowling, R. E. Wheeler, and others, and against W. H. Dowling, Bert Lindsay, and others, against Bert Lindsay and others, and against Baker Bryan, P. M. Hopkins, and others. On motions to quash indictments. Motions granted.

Wm. M. Gober, U. S. Atty., of Lakeland, Fla., and Damon G. Yerkes, Asst. U. S. Atty., of Jacksonville, Fla.

Geo. M. Powell, J. T. G. Crawford, Cockrell & Cockrell, John E. Mathews, W. A. Hallowes, Jr., and Edgar W. Waybright, all of Jacksonville, Fla., for defendants.

CLAYTON, District Judge. The defendants are indicted in these four cases for conspiracy to violate the National Prohibition Act (41 Stat. 305). On December 20, 1921, each defendant in each case filed demurrers to the indictments, motions to quash, and motions for bills of particulars. For the purpose of considering such demurrers and motions, the cases are consolidated and heard at the same time.

While there are different defendants in each case, the counts of the indictments are alike in the material aspects, as it will hereinafter appear. Inasmuch as the demurrers and the motions to quash are based upon identical grounds, such motions will not be separately considered, for that is not deemed necessary.

The motion for a bill of particulars need not be passed upon, if the indictments are so fatally defective in the statements of facts alleged to constitute the offense charged that conviction or acquittal upon the indictments would constitute no bar to another prosecution for the same offense. If the indictments are not deemed substantially good, bills of particulars will not be ordered, for a bill of particulars cannot cure a bad pleading. It is because the indictment is good against a general demurrer that the defendant is compelled to resort to a motion for a bill of particulars. If, however, it is bad, the remedy is by demurrer or motion in arrest of judgment. U. S. v. Tubbs (D. C.) 94 Fed. 356, 360; Floren v. U. S., 186 Fed. 961, 964, 108 C. C. A. 577.

[1] The first counts in each indictment are legally identical and they charge:

"That on, to wit, the [naming the day] day of [naming the month and year], at Jacksonville, Florida, in the district aforesaid, and within the jurisdiction of this court [naming the defendants] unlawfully, willfully, knowingly, feloniously, and maliciously did combine, conspire, confederate, and agree together, and together with divers other persons, whose names are to the grand jurors unknown, to commit an offense against the United States;

that is to say, to violate title 2 of the National Prohibition Act in this, to wit, that the said [naming the defendants] would then and there possess certain intoxicating liquors to wit [here stating the number of cases of liquor], contrary to the provisions of said act."

It is not stated in indictment No. 1441 at what place in said district the alleged conspiracy was entered into; and in indictment No. 1424 it is not charged that divers other persons were parties to the conspiracy, as it is done in indictments 1441 and 1442. In other respects, all four of these counts are legally the same in the four indictments.

The first seven grounds of demurrer are:

"(1) That the said count of said indictment does not allege facts sufficient to show the commission by the said defendant of any offense against any law of the United States.

"(2) It is not made to appear, by any issuable allegations of fact in said count contained, what section of title 2 of the National Prohibition Act it will be claimed or sought to be proved the said defendants violated.

"(3) That said count of said indictment is so vague, indefinite, and uncertain that it does not fairly or sufficiently inform the said defendant of the charge he is expected to meet at the trial.

"(4) That it is not made to appear by any issuable allegations of fact in said count of said indictment contained in what county of said district it will be claimed or sought to be proved that the said alleged offense was committed.

"(5) The accusatory part of said count is so vague, indefinite, and uncertain that a judgment upon a trial would not protect the said defendant against a subsequent prosecution.

"(6) The alleged conspiracy is not clearly and definitely charged.

"(7) No plan or scheme whereby an offense against the United States was to be committed is alleged."

Let us now turn to the language of the indictments purporting to impart to the defendants the information as to what particular offense it is charged that the defendants conspired to commit. It is charged:

"That they unlawfully," etc., "did combine, conspire," etc., "to commit an offense against the United States, that is to say, to violate title 2 of the National Prohibition Act, in this, to wit, that the said [naming defendants] would then and there possess certain intoxicating liquors, to wit [here stating the number of cases], contrary to the provisions of said act."

To say that they conspired to commit an offense against the United States is but a conclusion of the pleader. It is not a statement of facts. But it is further alleged that the defendants conspired to violate title 2, etc., in that they "would then and there possess certain intoxicating liquors," the character or kind not stated, "contrary to the provisions of said act."

Examination of the act reveals that it has 39 sections. Section 4 provides that denatured alcohol, rum, certain medicinal antiseptic preparations, patent and proprietary remedies, toilet and antiseptic articles, flavoring extracts, syrups, vinegar, and sweet cider may be manufactured, and of course may be possessed and transported, provided the person doing so acts under the permit and regulations contemplated in the act. All the articles above enumerated come within the definition of intoxicating liquors as contained in section 1 of the act. If the articles mentioned do not conform to descriptions and to prescribed regulations, the manufacturer is not protected, and his possession would

be unlawful, and any one who purchased from him would participate in unlawful possession. Further examination of the act shows that intoxicating liquors may be in other ways unlawfully possessed. It is urged that the vice of the indictment is that the particular manner or way in which the offense was committed is not stated.

The settled rules governing here are that a crime should not be charged by way of inference, but directly; the indictment should set forth accurately every ingredient of which the offense is composed; if the crime is made up of acts and intent, these must be set forth with reasonable particularity as to the time and place; the accused should be informed by the indictment as to the precise nature of the charge against him, to enable the court to say as to whether the facts set forth are sufficient in law to support a conviction; and the test is whether the indictment contains every element of the offense and sufficiently informs the defendant of what he must meet, and also whether it will enable him to sustain a plea of former acquittal or conviction. Johnston v. U. S., 87 Fed. 187, 30 C. C. A. 612; U. S. v. Cruikshank, 92 U. S. 543, 23 L. Ed. 588; Blitz v. U. S., 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725; Brown v. U. S., 143 Fed. 60, 74 C. C. A. 214; Floren v. U. S., supra; Harper v. U. S., 170 Fed. 385, 95 C. C. A. 555. Other illustrative cases hold that:

The indictments must set forth the facts and not the law, U. S. v. Nixon, 235 U. S. 231, 235, 35 Sup. Ct. 49, 59 L. Ed. 207, that an indictment, even if in the words of the statute, must set forth all the elements of the offense, Martin v. U. S., 168 Fed. 198, 93 C. C. A. 484; that, although the language of the statute is employed in the general description of the offense, it must be accompanied with such statement of facts and circumstances that will inform the accused of the specific offense, coming under the general description of the offense, with which he is charged, and that it must descend to particulars. U. S. v. Hess, 124 U. S. 483, 487, 8 Sup. Ct. 571, 31 L. Ed. 516.

In U. S. v. Beiner, 275 Fed. 704, 708, District Judge Orr, in considering an indictment very like these here, said:

"Inasmuch as section 37 of the Criminal Code denounces a conspiracy to commit any offense against the United States, and inasmuch as the indictment drawn under that section, and now under consideration, does not set forth which of many offenses denounced by the Volstead Act the accused had conspired to commit, the indictment must be deemed to be insufficient."

And it must be said that the words "to commit an offense against the United States" and "to violate title 2 of the National Prohibition Act," and that the defendants "would then and there possess certain intoxicating liquors, to wit [naming a specified number] cases, contrary to the provisions of said act," cannot render the indictments good. These words amount to no more than to say that the alleged possession was contrary to law. In Keck v. U. S., 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505, it was charged that the defendant did "knowingly, willfully, and unlawfully import and bring into the United States to wit, into the port of Philadelphia," diamonds of a stated value, "contrary to law and the provisions of the act of Congress in such cases made and provided." The allegations were held insufficient—that the allegations were too

general, and did not give the defendant the requisite information of the nature of the accusation against him. Chief Justice White, for the court, said that:

"As is apparent, the alleged offense averred in this count was charged substantially in the words of the statute. In the argument at bar counsel for the United States conceded the vagueness of the accusation thus made; and, tested by the principles laid down in U. S. v. Carll, 105 U. S. 611, 612, 26 L. Ed. 1135, U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, and Evans v. U. S., 153 U. S. 584, 587, 14 Sup. Ct. 934, 38 L. Ed. 830, the count was clearly insufficient. The allegations of the count were obviously too general, and did not sufficiently inform the defendant of the nature of the accusation against him. The words 'contrary to law,' contained in the statute, clearly relate to legal provisions not found in Rev. St. § 3082 (Comp. St. § 5785), itself; but we look in vain in the count for any indication of what was relied on as violative of the statutory regulations concerning the importation of merchandise. The generic expression, 'import and bring into the United States,' did not convey the necessary information, because importing merchandise is not per se contrary to law, and could only become so when done in violation of specific statutory requirements."

[2] During the argument it was insisted that the alleged overt acts show what kind or character of possession is charged. As a matter of fact they do not. But, even if they did, the alleged overt acts cannot be resorted to to aid the counts under consideration.

"Clauses in an indictment charging a conspiracy to commit an offense against the United States, which set forth the overt acts, cannot be resorted to in aid of the averments of the clause setting forth a conspiracy, where the latter clause does not refer to the other clauses for certainty as to its meaning." Joplin Mer. Co. v. U. S., 236 U. S. 531, 35 Sup. Ct. 291, 59 L. Ed. 705; U. S. v. Beiner, supra.

And the words "contrary to the provisions of said act" do not relieve the indictments of the defect, as demonstrated in Keck v. U. S., supra. One hundred and nine years ago it was said in The Hoppet, 7 Cranch, 389, 3 L. Ed. 380, Chief Justice Marshall speaking for the court:

"It is not contended that all these technical niceties, which are unimportant in themselves, and standing only on precedents of which the reason cannot be discerned, should be transplanted from the courts of common law into the courts of admiralty. But a rule so essential to justice and fair proceeding as that which requires a substantial statement of the offense upon which the prosecution is founded must be the rule of every court where justice is the object, and cannot be satisfied by a general reference to the provisions of the statute. It would require a series of clear and unequivocal precedents to show that this rule is dispensed with in courts of admiralty, sitting for the trial of offenses against municipal law. It is, upon these and other reasons, the opinion of the court that the information is not made good by the allegation that the offense was committed against the provisions of certain sections of the act of Congress. Is it cured by any evidence showing that in point of fact the vessel and cargo are liable to forfeiture? The rule that a man shall not be charged with one crime and convicted of another may sometimes cover real guilt, but its observance is essential to the preservation of innocence. It is only a modification of this rule that the accusation on which the prosecution is founded should state the crime which is to be proved, and state such a crime as will justify the judgment to be pronounced. The reasons for the rule are, first, that the party accused may know against what charge to direct his defense; second, that the court may see with judicial eyes that the fact, alleged to have been committed, is an offense against the laws, and may also discern the punishment annexed by the law to the specific offense. These reasons apply to prosecutions in courts

of admiralty with as much force as to prosecutions in other courts. It is therefore a maxim of the civil law that a decree must be secundum allegata as well as secundum probata. It would seem to be a maxim essential to the due administration of justice in all courts."

The foregoing language is cited with approval in the case of U. S. v. Weed, 72 U. S. (5 Wall.) 62, 68, 18 L. Ed. 531, by Justice Miller, and also in U. S. v. Huckabee, 16 Wall. 414, 21 L. Ed. 457, and U. S. v. Fifteen Barrels Distilled Spirits (D. C.) 51 Fed. 416, 422, and it does not appear to have ever been departed from by the Supreme Court or any other federal court.

The cases of Hockett v. U. S. (C. C. A.) 265 Fed. 588, and Pierce v. U. S., 252 U. S. 239, 40 Sup. Ct. 205, 64 L. Ed. 542, are not in conflict with this holding. They hold that, when an indictment charges that certain acts were committed "wrongfully, unlawfully, and feloniously," the language is sufficient to impart an unlawful motive. In the indictments under consideration the charge of "unlawful," etc., does not apply to the possession, but only to the conspiracy. The possession might be contrary to certain provisions of the act, and in harmony with others, for the reason that in one clause or section possession is permitted on certain conditions, and in other sections it is prohibited.

In the case of Fontana v. U. S. (C. C. A.) 262 Fed. 283, the requisites of an indictment are set forth by the Circuit Court of Appeals of the Eighth Circuit, as follows:

"In order to constitute due process of law, an indictment must not only inform the accused that there is a charge against him, but must be sufficiently distinct and specific to advise him what he has to meet and to give him a fair and reasonable opportunity to prepare his defense. A person indicted for a serious offense is presumably innocent, and the sufficiency of an indictment must be tested upon the presumption that he is innocent, and has no knowledge of the facts charged against him. An indictment must set forth the facts so distinctly as to advise accused of the charge, and give him a fair opportunity to prepare his defense, so particularly that a conviction or acquittal would bar another prosecution for the same offense, and so clearly that the court may determine whether the facts stated support a conviction."

In the case of Anderson v. U. S., 260 Fed. 557, 171 C. C. A. 341, the same court applied the same rules to an indictment for conspiracy to steal from a freight car, and held the indictment defective in not sufficiently identifying the offense which was the object of the conspiracy. The count of the indictment held bad is quoted as follows:

"That R. Q. Ayers" and others (naming the others), "on the 8th day of November, in the year 1917, in the said division of said district, and within the jurisdiction of said court, did then and there unlawfully, willfully, and feloniously conspire, confederate, and agree among themselves to commit an offense against the United States; that is to say, to steal from a certain railroad freight car certain goods then and there moving as and containing or constituting a part of an interstate shipment of freight, with the intent then and there to convert said goods to their own use."

As will be seen, it was more certain than the indictment in the instant case; but, after discussion and citation of authority, the court held it insufficient. At the same time the court showed that it might have been possible to charge the defendants with conspiring to steal

generally goods moving in interstate commerce, but that the pleader had narrowed the scope of the conspiracy to a certain railroad freight car, without in any way identifying the car, the railroad on which it was moving, the goods which it contained, or the point of origin or destination. The language of this decision applies with particular force to the present case. For here, too, the pleader in each count has narrowed the conspiracy to a certain lot of liquors, without in any way identifying it, either by telling what kind it was, or when or where it was possessed, or for what purpose. The case above cited also holds that recourse may not be had to the overt acts to supply wanting certainty of allegations. But in the cases here the overt acts are equally as vague as the count itself. The counts above referred to are bad.

[3] The grounds, 8, 9, and 13 to 15, inclusive, of demurrer to the first counts may also be considered together. They are:

"(8) It is not charged that defendants conspired to possess intoxicating liquors for beverage purposes, or any unlawful purpose.

"(9) It does not appear that the alleged possession was not within one of the exceptions contained in the National Prohibition Act.

"(13) It is an essential ingredient of the crime of possessing intoxicating liquors that the person so charged shall not be a manufacturer of any of the articles enumerated in section 4, title 2, of the National Prohibition Act.

"(14) It is an essential ingredient of the crime of possessing intoxicating liquors that the person so charged shall not have procured possession thereof upon the prescription of a physician as authorized and provided for in section 6, title 2, of the National Prohibition Act.

"(15) It is an essential ingredient of the crime of possessing intoxicating liquors that the person so charged shall not possess such intoxicating liquors in his private dwelling house for his personal consumption as authorized and provided for in section 33, title 2, of the National Prohibition Act."

These grounds are urged, not as the basis of a contention that the indictment should negative the exceptions contained in the act, but for the purpose of pointing out and emphasizing the fact that neither the National Prohibition Act nor the Eighteenth Amendment made, or attempted to make, all possession of intoxicating liquors unlawful, and that an indictment, to be sufficient, must state facts showing that the defendant's possession, either actual or intentional, was of a character prohibited by title 2 of the Volstead Act.

As we have now seen by the previously cited authorities, the words "contrary to the provisions of said act" are but the legal conclusion of the pleader, and not the allegations of fact, such as are required by the rule. They cannot be used, then, in determining the sufficiency of the indictment. Without them we have simply the charge that the defendants would "then and there possess certain intoxicating liquors, to wit, ——— cases of intoxicating liquor."

[4] The grounds 10, 11, and 12 of the demurrers raise the question as to whether the mere possession of intoxicating liquor is unlawful. The language is:

"(10) That part of the National Prohibition Act which defines the mere possession of intoxicating liquors as a crime is unconstitutional and void.

"(11) The Eighteenth Amendment to the Constitution does not vest in the Congress the power to punish the mere possession of intoxicating liquors.

"(12) Prohibiting the mere possession of intoxicating liquors is not a valid exercise of the police powers vested in the Congress."

From the foregoing discussion of these counts it is apparent that the bare possession of intoxicating liquors is all that is charged. No accompanying facts are alleged to show that such possession was unlawful either on account of the time, place, or purpose of the possession or of the character of the liquor. The Eighteenth Amendment to the Constitution is in these words:

"After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation from the United States and all territory subject to the jurisdiction thereof, for beverage purposes is hereby prohibited."

This amendment is at once the law forbidding the manufacture, sale, transportation, importation, and exportation of intoxicating liquors for beverage purposes, and at the same time it is a grant of plenary power to the Congress to enact legislation appropriate for its enforcement. The amendment does not proprio vigore provide the means for making it effective; that duty is conferred upon the Congress, and within the scope of the amendment the legislative branch can enact such laws as it may deem proper. Of course the Congress cannot transcend the fundamental law or the delegated power. The amendment does not authorize the Congress to so legislate as to denounce the bare intrastate possession of intoxicating liquors. To do this would be an illegal protrusion. The words, "for beverage purposes," of the amendment, are as plain and important as any other words of the amendment, and they are inseparable from the other words. They qualify "manufacture," "sale," "transportation," "importation," and "exportation."

However, I think the Congress has the power to prohibit the possession of intoxicating liquors, if the possession is inhibited for the purpose of rendering effective the expressed prohibitions of the amendment; but the Congress cannot do so for the purpose of adding a new prohibited act to the fundamenal law. It is clear that the Congress is without authority to make the mere possession of intoxicating liquors—possession stripped of every other fact or incident—a crime. The amendment neither by expression nor implication denounces the simple possession of intoxicating liquors. The possession is lawful, unless it be coupled with the illegal "manufacture" or "sale" or "transportation" or "importation" or "exportation."

I am not advised that any court has passed directly upon this question but I think the decision in U. S. v. Jin Fuey Moy, 241 U. S. 394, loc. cit. 401, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, is at least persuasive, if not conclusive, of the correctness of the view above advanced. There the court said:

"If opium is produced in any of the States, obviously the gravest question of power would be raised by an attempt of Congress to make possession of such opium a crime."

Of course the Eighteenth Amendment does not apply to opium; but, as it has been said, the amendment does not denounce as unlawful mere possession of intoxicating liquors, nor does the language of the amendment authorize the Congress to make the mere possession of intoxicating liquors a crime, as I have attempted to show.

638 278 FEDERAL REPORTER

In the instant case, the liquors may have been in existence before the adoption of the amendment, and for aught that appears from the indictment they may have been in existence at such prior time. The offense which the defendants are charged with conspiring to commit is the possession of liquors disconnected from any facts charging the manufacture, sale, transportation, importation, or exportation in violation of the law, or any intention or purpose to possess or use them in violation of the law. The indictment in that it charges nothing more than the bare possession of intoxicating liquor is defective.

Section 33 of the act provides that:

"After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title. Every person legally permitted under this title to have liquor shall report to the commissioner within ten days after the date when the eighteenth amendment of the Constitution of the United States goes into effect, the kind and amount of intoxicating liquors in his possession. But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for the use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used."

This section does several things. It prescribes a rule of evidence where possession of the liquor is shown on the trial; it requires every person legally permitted to have liquor to report to the commissioner, etc., and then proceeds to say:

"But it shall not be unlawful to possess liquors in one's private dwelling * * * for the personal consumption of the owner thereof and his family * * * and of his bona fide guests when entertained by him therein"

—and puts the burden of proving that such liquors were lawfully acquired, possessed, and used on the possessor. But the act cannot be said to denounce possession, isolated from all other facts or circumstances, as an offense. And if it did it would exceed the power conferred upon the Congress by the Eighteenth Amendment, and to that extent would be void, as I have hereinbefore held.

[5] The demurrers attack the indictment for failure to allege that the overt acts were committed to effect the object of the conspiracy. These grounds will be discussed together and they are:

"(16) It is not made to appear that the alleged overt acts were committed before the consummation of the alleged conspiracy.

"(17) It is not made to appear by any issuable allegations of fact that the alleged overt acts, or either or any of them, were committed with the purpose or intention of putting the alleged unlawful agreement or conspiracy into operation.

"(18) It is not alleged that the overt acts charged were to effect the object of the alleged conspiracy."

The first and second counts of the indictment employ the following language in introducing the overt acts:

"That pursuant to said unlawful conspiracy the said defendants did then and there do and commit the following acts."

In none of the counts is there any language which charges or tends to charge that the acts alleged were committed for the purpose or with intent "to effect the object of a conspiracy," which language quoted is from section 37 of the Criminal Code (Comp. St. § 10201).

In Collier v. U. S., 255 Fed. 328, 166 C. C. A. 498, the Circuit Court of Appeals, Fifth Circuit, went to the limit in sustaining an indictment under section 37, and held that it was not necessary to allege or show that the overt acts, or either of them, "be calculated or have a tendency to accomplish the object of the conspiracy." But the court also held that:

"It is enough if it is done with the purpose or intention of putting the unlawful agreement into operation, whether it is or is not effective towards that end."

This appears to me to be equivalent to holding that to be sufficient the indictment must charge that the act was done with the purpose or intention of effecting the object of the conspiracy; and these counts cannot be said to do that.

There is a distinction between doing something pursuant to the conspiracy and doing something to effect the object of the conspiracy. Manifestly, if alleged conspirators met and entered into a conspiracy to violate a law of the United States, and pursuant to the meeting adjourned finally with intent to abandon the project, such adjournment would be pursuant to the original design of meeting, which was a part of the unlawful conspiracy, the object of their coming together. But I think it could not be said that the adjournment with intent to abandon the project, which is what the law permits one to do (see Collier Case, supra), was an act done with the purpose or intent of effecting the object of the conspiracy. It might be that, if it was charged that they adjourned to go their several ways to carry out and effect the object of the conspiracy, or with intent of effecting the object, this would be sufficient; but, unless it was charged that the act was committed for the purpose or with the intent of effecting the object of the conspiracy, it would be clearly insufficient, even under the Collier Case. This would be so, if for no other reason than because of the presumption of innocence which would be implied in the absence of allegations of purpose or intent that the person acting as alleged in the overt acts did so innocently, and hence on his own account only, and not to effect the object of the conspiracy. All intendments are against the pleader. No inference of intent or purpose will be indulged in to supply the omission of this essential element of an offense under section 37 of the Criminal Code.

From Read v. Coker, 13 C. B. 850, 963, it appears that a man might act in pursuance of an act of parliament without acting in exact execution of it. In the cases now under consideration the indictments must allege and the proof show that what was done by way of overt acts was done with intent to execute the conspiracy. Nothing less will satisfy the rule as laid down in the adjudged cases.

In prosecutions under the conspiracy statute, where the purpose or intention of the overt acts is made by the statute an element of offense, such purpose or intention must be both alleged and proved.

"In a criminal case, where the intent is made a part of the offense, the intent should be alleged in the indictment, and must be proved." U. S. v. Wentworth & O'Neil (C. C.) 11 Fed. 52.

"I have held that a particular intent, which made an act a crime by the words of a statute, is a part of the substance." U. S. v. Jackson (C. C.) 2 Fed. 502.

"Now, it is only where the Legislature accompanies its prohibition of particular conduct with a declaration that the inhibited act shall be done with a specific intent, that that intent need be either specifically averred by the indictment or specifically proved on the trial." U. S. v. Jackson (C. C.) 25 Fed. 548, 550.

In the instant case, the statute (section 37, C. C.) accompanies its prohibition of particular conduct with a declaration that the inhibited act shall be done with a specified intent. For instance, it does not provide that a mere conspiracy to commit an offense against the laws of the United States shall be punished; nor does it provide that such a conspiracy accompanied by the doing of any act shall constitute guilt, but only that:

"If two or more persons conspire * * * to commit any offense against the United States * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties * * * shall be fined," etc.

In the Collier Case, our own Circuit Court of Appeals has construed this language to mean "with the purpose or intent of putting the unlawful agreement into operation." We have here then an intent, which is made by statute an essential element of the offense, and hence one which must be both alleged and proved.

It was argued that, by reference to the overt acts alleged, it will appear that they were calculated to effect the alleged object of a conspiracy; but in the Joplin Mer. Co. Case, supra, the court held that this could not be done. So it may be said here that the charging part of an indictment for conspiracy must stand on its own bottom, and that no reference to other portions of the instrument, not expressly made in the indictment itself, may be permitted to supply deficient allegations.

In the case of Michael Dealy v. U. S., 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545, the Supreme Court sustained an indictment using the language, "according to and in pursuance of"; but this is as far as any court has gone, or, it is believed, ever will go. The indictments in these cases use only the language "pursuant to," which, literally translated, means nothing more than "following." The demurrers on these grounds are sustained.

There is nothing in the allegations setting forth the overt acts themselves to indicate that they were committed to effect the object of the alleged conspiracy. No time is alleged, and, from all that appears, it might have been that the acts alleged were committed long after the object of the conspiracy, and after the "partnership of conspiracy" was at an end.

Counts No. 2 in indictments Nos. 1424, 1441, and 1442, and count No. 3 of indictment 1441, count No. 4 of indictment 1424, and count No. 4 of indictment No. 1442, are alike; the difference being that in one set it is charged that the proposed violation was to be the possession while in another it was to have been by transporting and in the second set it is alleged to have been with the intention to sell. In other respects these counts are legally identical, and the reasoning applied to the counts heretofore discussed is applicable to these.

[6] The fifth and sixth grounds of demurrer to count No. 4 of indictment 1424 show an additional reason why it is insufficient. These grounds are:

"(5) Section 3082 of the Revised Statutes of the United States, as applied to intoxicating liquors for beverage purposes, has been repealed by the Eighteenth Amendment to the Constitution and the National Prohibition Act.

"(6) Section 3082, of the Revised Statutes of the United States, as applied to intoxicating liquor for beverage purposes, has been superseded by the National Prohibition Act."

Considering these grounds of demurrer, I think the passage of the Volstead Act impliedly repealed section 3082 of the Revised Statutes. It is noted that the Volstead Act is a later act than section 3082, and that the Volstead Act imposes penalties of less severity than those imposed by section 3082. In the case of U. S. v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 66 L. Ed. ——, the holding was as follows:

"Existing penal statutes are repealed by later ones covering practically the same acts, but fixing lesser penalties."

Also see U. S. v. Windham (D. C.) 264 Fed. 376.

Section 3082 is the smuggling statute, and it imposes a penalty of $5,000 and two years' imprisonment upon any one found guilty of knowingly assisting in smuggling. Section 3 of the Volstead Act prohibits importation of intoxicating liquors, and section 29 provides that, for violations where a special penalty is not provided, the punishment shall be a fine of not more than $500. So the ground is fully covered by the Volstead Act, as it is a later statute, and as the penalty prescribed by it is less than that prescribed by section 3082, R. S. section 3082 would also appear to come within the provisions of section 35 of the Volstead Act, which provides for the repeal of conflicting acts to the extent of the conflict.

[7] Counts No. 3 of indictments 1424 and 1442 are alike, except that in 1442 the count includes the word "time" and the quantity of intoxicating liquor is alleged to be 100 cases, instead of 400 cases, and the names of the defendants are different. The substance of these counts are that:

"At some time and at some place within the district the defendants did unlawfully, willfully, knowingly, feloniously, and maliciously maintain a common nuisance; that is, did keep —————— cases of intoxicating liquors on board a certain launch."

The demurrers to these counts are:

"(1) That the said count of the said indictment does not allege facts sufficient to show the commission by the said defendants of any offense against any law of the United States.

278 F.—41

"(2) That said count of said indictment is so vague, indefinite, and uncertain that it does not fairly or sufficiently inform the said defendant of the charge he is expected to meet at the trial.

"(3) It does not appear that the alleged nuisance was maintained within the jurisdiction of this court.

"(4) This count is improperly joined with the other counts of said indictment.

"(5) It is not alleged that the intoxicating liquors were kept for sale.

"(6) It is not alleged that the intoxicating liquors were kept for any purpose prohibited by the National Prohibition Act.

"(7) No sufficient facts are alleged to make out the offense of maintaining a common nuisance, as defined by the National Prohibition Act."

These counts are framed under section 21 of the Volstead Act, the applicable part of the section being:

"Any boat * * * where intoxicating liquor is * * * kept * * * in violation of this title * * * is hereby declared to be a common nuisance, and any person who maintains such common nuisance shall be guilty," etc.

The pleader assumed that any one who kept intoxicating liquors on a boat was guilty of maintaining a common nuisance; but the law, fairly interpreted, means that the keeping of liquor, to constitute a nuisance, must be in violation of title 2 of the Volstead Act. There are no allegations in either of the counts that indicate that the alleged "keeping" was not in all respects lawful. Of course, they do allege that it was all "contrary to the form of the statute," etc.; but, as we have seen by the authorities cited, such language cannot be made to fill the place of allegations of fact showing a violation of the act.

Each of these counts is supposed to be complete in itself; but in neither do we find any time or place alleged where it will be sought to be shown the alleged nuisance was maintained. In one count it is said, "that at the place within the jurisdiction aforesaid"; and the other says, "that at the time and place aforesaid." In neither case is there any "aforesaid" time and place. Not only is the allegation of time and place wanting, but there is not any attempt at a description of the boat on which it is claimed the nuisance was maintained. The case of Anderson v. U. S., 260 Fed. 557, 171 C. C. A. 341, cited above, is peculiarly applicable, for the reason that it charges conspiracy, and the description was of the object of the conspiracy merely, while here the charge is a substantive one.

In the Anderson Case, the court held that, where the charge was conspiracy to steal from a freight car in interstate commerce, the indictment was insufficient, because it did not sufficiently identify the freight car in question. As the court said:

"To illustrate: The words 'certain railroad freight car' might apply to any of the vast number of freight cars in existence in the United States, or in the world, for that matter; and for the same reason the words 'certain goods' might apply to any kind of the thousand varieties of property."

Here the words "a certain boat" might apply to any boat; and the words "intoxicating liquors" might apply to any of the many kinds and brands in existence, coming within the definition in section 1 of the Volstead Act.

But, in addition to all the foregoing, there is no showing of the "maintenance" of a "nuisance." It may be said that, not only is there no showing that the intoxicating liquors were kept in a manner violative of the act, or in such manner as to come within the definition of a nuisance as contained in section 21, but the allegations which should be present to show "maintenance" were also wanting. The word "maintenance" implies continuance, and the act implies it from the use of the word "keep." The meaning of these words was passed upon in the case of Commonwealth v. Patterson, 138 Mass. 498, 500, where the following language was used in reference to a liquor nuisance:

"The proprietor of a building cannot be said to 'keep or maintain' a common nuisance, within the meaning of Pub. St. c. 101. § 6, making a building used for the sale of intoxicating liquors a nuisance, on the strength of a single casual sale, made without premeditation in the course of a lawful business. The words 'keep or maintain' import a certain degree of permanence."

No facts are alleged in these counts of the indictment showing, or tending to show, a keeping or maintaining, or any other status from which permanence could be inferred.

In my opinion, all the indictments are insufficient, and demurrers to each of them are sustained; and it is ordered and adjudged that they each separately and severally be quashed.