## RIGGS v. UNITED STATES.*

### SAME v. WORKMAN, U. S. Marshal.

(Circuit· Court of Appeals, Fourth Circuit.
June 8, 1926.)

Nos. 2470, 2471.

**1. Criminal law ⟨key⟩978.**

Probation Act March 4, 1925 (Comp. St. Supp. 1925, §§ 10564½–10564⅘c) *held* not unconstitutional, as in conflict with pardoning power of president.

**2. Intoxicating liquors ⟨key⟩13.**

Const. U. S. Amend. 18, *held* to confer on Congress power to make possession of intoxicating liquors for beverage purposes a criminal offense, as was done by National Prohibition Act, tit. 2, §§ 3, 25, 33 (Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½m, 10138½t).

**3. Criminal law ⟨key⟩1001.**

District Court *held* to have acted within its discretion and power under Probation Act March 4, 1925 (Comp. St. Supp. 1925, §§ 10564½–10564⅘c), in setting aside order of probation and entering sentence at term subsequent to that at which plea of guilty was received and period of probation fixed.

**4. Criminal law ⟨key⟩1001.**

Much latitude is allowed District Judges in enforcement of Probation Act March 4, 1925 (Comp. St. Supp. 1925, §§ 10564½–10564⅘c).

**5. Criminal law ⟨key⟩1058.**

Where no exception was taken to action of trial court in revoking probation and imposing sentence, although defendant was present, it is unnecessary to determine whether defendant was entitled to hearing on question of breach of terms of probation.

**6. Criminal law ⟨key⟩1001.**

Under Probation Act March 4, 1925 (Comp. St. Supp. 1925, §§ 10564½–10564⅘c), District Court had right to suspend imposition as well as execution of sentence.

**7. Habeas corpus ⟨key⟩4.**

Habeas corpus cannot be availed of as appeal in criminal case, nor resorted to, to add to or amplify record in a way not made in criminal case, and presented therein.

In Error to and Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

L. J. (Bear Cat) Riggs was convicted of having possession of intoxicating liquor and of carrying on the business of a retail liquor dealer without paying the special tax required by law, and he brings error. Petition by L. J. Riggs for a writ of habeas corpus, to be directed to Siegel Workman, United States Marshal for the Southern District of West Virginia. From an order denying the writ, petitioner appeals. Affirmed in both cases.

*Certiorari denied 47 S. Ct. 110, 71 L. Ed. —.

A. M. Belcher, of Charleston, W. Va., for plaintiff in error and appellant.

Elliott Northcott, U. S. Atty., of Huntington, W. Va. (William J. Donovan, Asst. Atty. Gen., and B. J. Pettigrew, Asst. U. S. Atty., of Charleston, W. Va., on the brief), for defendant in error and appellee.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

WADDILL, Circuit Judge. These two cases, the first named being two criminal prosecutions consolidated by consent, and the second a writ of habeas corpus growing out of the said cases, involve the question of the validity of the sentence imposed upon the plaintiff in error (in criminal case No. 2470), who was defendant in the District Court, and will be referred to hereinafter as defendant. The cases were heard together, because of their relation to each other, and will be considered and disposed of in a single opinion. In the criminal case the defendant was indicted for feloniously having in his possession on the ——— day of March, 1925, intoxicating liquor intended for beverage purposes, in violation of section 3, title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½aa). The said indictment further recited the previous convictions of the defendant for two offenses of the same character, to wit, on the 4th day of December, 1923, and on the 18th day of December, 1924. The defendant was also indicted for unlawfully and feloniously carrying on the business of a retail liquor dealer without having paid the special tax required therefor by law.

The record recites that on the 25th of April, 1925, the defendant agreeing thereto, the two indictments, numbered, respectively, 266 and 288, were ordered to be consolidated, and that thereupon on said day the defendant pleaded guilty to said indictments, and that, "it appearing to the satisfaction of the court that the ends of justice and the best interest of the public, as well as that of the said defendant, will be subserved by the suspension of the imposition or execution of sentence, and by placing the defendant upon probation, it is therefore considered by the court that the said L. J. (Bear Cat) Riggs be placed upon probation for the period of four years."

The record also shows that at a later day, and at another term of court, to wit, on the 21st day of November, 1925, as follows:

"This day came again the United States, by its United States attorney, as well also

as the defendant, L. J. (Bear Cat) Riggs, in his own proper person, whereupon the United States made it appear by evidence satisfactory to the court that the said Riggs had violated the terms and conditions of his probation duly imposed upon him by this court on the 25th day of April, 1925, upon the defendant entering pleas of guilty to indictments Nos. 266 and 288, pending against him in this court, charging him, the said L. J. (Bear Cat) Riggs, with a third violation of the National Prohibition Act, and with having carried on the business of a retail liquor dealer without having paid the special tax as provided by law, which cases were consolidated on the date aforesaid.

"The court thereupon proceeded to pronounce judgment upon said pleas of guilty, and here now fixes the term of his sentence of confinement at four years. Therefore it is considered by the court that the said L. J. (Bear Cat) Riggs be confined and imprisoned in the United States penitentiary at Atlanta, Georgia, for the period of four years, and that the United States of America recover no costs from said defendant about her prosecution in this behalf expended, and the said L. J. (Bear Cat) Riggs is remanded to the custody of the marshal of this court."

The assignments of error, as well in the criminal case as in the habeas corpus proceeding, challenges the legality of the District Court's action as above recited, particularly: Its jurisdiction and power to set aside, on the 21st of November, 1925, the probation order of the 25th of April, 1925, made at a previous term of the court, and enter judgment in lieu thereof sentencing the defendant to the penitentiary, as shown by its order of the 21st of November aforesaid; that the indictments alleging unlawful possession of intoxicating liquor charged no offense against the laws of the United States, because the Congress was without power under the Eighteenth Amendment to the Constitution to make the mere possession of intoxicating liquors a criminal offense, and that the act seeking so to do was unconstitutional and void; that the Probation Act of March 4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), is unconstitutional and void, because it is in conflict with the Constitution of the United States, especially in that it encroaches upon, and in effect deprives the President of, the right to exercise executive clemency in criminal cases; that the court was wholly without jurisdiction, upon the record in the case, to enter any judgment against the defendant, and

should have set aside its judgment and discharged the prisoner from custody, as asked for in his petition for habeas corpus. In passing upon these assignments, consideration will first be given to the constitutional questions raised.

First. It is earnestly insisted that the Probation Act of the 4th of March, 1925, is unconstitutional, because the same encroaches upon the pardoning power of the President. Sections 1, 2, and 5 of the Probation Act (43 Stat. c. 521, pp. 1259, 1260 [Comp. St. Supp. 1925, §§ 10564⅘, 10564⅘a]) are as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the courts of the United States having original jurisdiction of criminal actions, except in the District of Columbia, when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, shall have power, after conviction or after a plea of guilty or nolo contendere for any crime or offense not punishable by death or life imprisonment, to suspend the imposition or execution of sentence and to place the defendant upon probation for such period and upon such terms and conditions as they may deem best; or the court may impose a fine and may also place the defendant upon probation in the manner aforesaid. The court may revoke or modify any condition of probation, or may change the period of probation: Provided, that the period of probation, together with any extension thereof, shall not exceed five years.

"While on probation the defendant may be required to pay in one or several sums a fine imposed at the time of being placed on probation and may also be required to make restitution or reparation to the aggrieved party or parties for actual damages or loss caused by the offense for which conviction was had, and may also be required to provide for the support of any person or persons for whose support he is legally responsible.

"Sec. 2. That when directed by the court, the probation officer shall report to the court, with a statement of the conduct of the probationer while on probation. The court may thereupon discharge the probationer from further supervision and may terminate the proceedings against him, or may extend the probation, as shall seem advisable.

"At any time within the probation period the probation officer may arrest the proba-

tioner without a warrant, or the court may issue a warrant for his arrest. Thereupon such probationer shall forthwith be taken before the court. At any time after the probation period, but within the maximum period for which the defendant might originally have been sentenced, the court may issue a warrant and cause the defendant to be arrested and brought before the court. Thereupon the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed. * * *

"Sec. 5. That this act shall take effect immediately."

Sections 3 and 4 (sections 10564⅘b, 10564⅘c) provide for the appointment of probation officers and define their functions and authority.

[1] The position taken is clearly untenable, as the act in no way contravenes the constitutional right of the President, in the exercise of executive clemency, and that power of the Chief Executive, in respect to those serving their probationary sentences, is as full and complete as if the probation law had never been enacted. The legislation is of a highly remedial character, and the same should receive a liberal interpretation, having regard to the interests of the unfortunate, in whose behalf it was enacted. It in no way encroaches upon the authority of the Chief Executive, as the authorities clearly establish. The Supreme Court, in considering the authority of the President to pardon, said:

"* * * It extends to every offense known to the law, and may be exercised at any time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment." Ex parte Garland, 4 Wall. 333, 380 (18 L. Ed. 366).

That court, in a much later case (242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355), having under consideration the necessity for legislation to enable the courts to indefinitely suspend sentence upon a conviction of a crime, and the course to be pursued in future convictions, said:

"* * * And, so far as the future is concerned, that is, the causing of the imposition of penalties as fixed to be subject, by probation legislation or such other means as the legislative mind may devise, to such judicial discretion as may be adequate to enable courts to meet, by the exercise of an enlarged but wise discretion, the infinite variations which may be presented to them for judgment, recourse must be had to Congress, whose legislative power on the subject is, in the very nature of things, adequately complete." Ex parte United States, 242 U. S. at page 52, 37 S. Ct. 78, 61 L. Ed. 129, L. R. A. 1017E, 1178, Ann. Cas. 1917B, 355.

A more specific ruling on this subject could not well be furnished. Indeed, the Supreme Court, in plain and unequivocal language, pointed to Congress as possessing the requisite power to afford the relief needed.

Since the passage of the Probation Act of March 4, 1925, the questions under consideration have been reviewed by the Circuit Court of Appeals of the Ninth Circuit (7 F.[2d] 590), and the constitutionality of the act fully sustained, and the same held in no manner to encroach upon the pardoning power of the President. This case will be found to contain an able and comprehensive review of the law applicable here. It arose under the act we have to consider, and to it and the authorities cited therein special reference is made (Nix v. James, 7 F.[2d] 590, 594), as is also to a decision of the Circuit Court of Appeals of the Seventh Circuit (Kriebel v. U. S., 10 F.[2d] 762), likewise construing the Probation Act.

In Richardson v. Commonwealth, 131 Va. 802, 808, 809,[1] a very recent case, in an opinion by President Prentis, will be found an able and interesting review of the authorities on the subject of the power of Congress to pass acts of the character under consideration, and holding that they do not invade the pardoning power of the executive.

[2] Second. Likewise we are unable to perceive why, under the Eighteenth Amendment, ample power was not conferred upon Congress, by appropriate legislation, to make it an offense to have unlawfully in one's possession intoxicating liquors intended for beverage purposes. It is earnestly insisted that such authority was not afforded, and that hence the provisions of the Volstead Act, seeking to create such offense, are void for the lack of constitutional authority, and that the indictment against the accused charges no offense under the law. The validity of the constitutional amendment in question has been approved by the Supreme Court (National Prohibition Cases, 253 U. S. 350, 356, 357, 40 S. Ct. 486, 588, 64 L. Ed. 946), and it cannot be doubted that it was the intent and purpose in thus amending the organic law to forbid the manufacture, sale, or transportation of intoxicating liquors, or the unlawful possession thereof to be used for beverage purposes. Grogan v. Walker & Sons, 259 U. S. 80, 89, 90, 42

[1] 109 S. E. 460.

S. Ct. 423, 66 L. Ed. 836, 22 A. L. R. 1116). It may be that the precise words respecting the possession of liquor are not used in the constitutional amendment, and it not infrequently happens in enacting laws that such is the case; but the purpose of the constitutional amendment was to cover generally the very subject under consideration, and it undoubtedly vested in Congress the power to say what reasonably, and in its good judgment, should and should not be necessary to enforce the same. Congress was clothed with the general power, along with the several states, to enforce the amendment by appropriate legislation; that is to say, to pass laws for the regulation of the subject under consideration and to provide punishment for the violation of such laws and regulations. In U. S. v. Fisher, 2 Cranch, 358, at page 396 (2 L. Ed. 304), the court said:

"Congress must possess the choice of means, and must be empowered to use any means which are in fact conducive to the exercise of a power granted by the constitution."

In McCulloch v. Maryland, 4 Wheat. 316–421 (4 L. Ed. 579), Chief Justice Marshall said:

"Sound construction of the Constitution must allow to the national Legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional."

Volstead Act Oct. 28, 1919, c. 85, 41 Stat. 305 (Comp. St. Ann. Supp. 1923; § 10138¼ et seq.), under consideration, has been held to be valid by the Supreme Court, and the act amply covers the offense charged in the indictment. Section 3, title 2, of this act provides:

"No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

Section 25, title 2, of the same act (Comp. St. Ann. Supp. 1923, § 10138½m), declares that:

"It shall be unlawful to have or possess any liquor * * * intended for use in violating this title. * * * *"

Section 33, title 2, of the same act (Comp. St. Ann. Supp. 1923, § 10138½t), provides as follows:

"After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title."

In Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 94, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548, Mr. Justice Clarke, speaking for the Supreme Court, emphasized the fact that the presumption arising from the presence of liquor in a warehouse, then being considered, could be explained, and that it was explained there. But that cannot avail the defendant here, where the indictment charges the unlawful possession of the liquor to be used for beverage purposes, to which a plea of guilty was entered, and proof made of similar offenses in two other cases by the same defendant. Other decisions will be found to strongly support the views herein expressed. Crane v. Campbell, 245 U. S. 305, 38 S. Ct. 98, 62 L. Ed. 304; Hamilton v. Kentucky Distilleries, etc., 251 U. S. 146, 40 S. Ct. 106, 64 L. Ed. 194; Ruppert v. Caffey, 251 U. S. 264, 40 S. Ct. 141, 64 L. Ed. 260; Rhode Island v. Palmer, 253 U. S. 350, 40 S. Ct. 486, 588, 64 L. Ed. 946; Everard's Breweries v. Day, 265 U. S. 545, 558, 559, 560, 44 S. Ct. 628, 68 L. Ed. 1174; U. S. v. Riggs (C. C. A. 4th Circuit) 299 F. 273; Massey v. U. S. (C. C. A.) 281 F. 293.

In Hamilton v. Kentucky Distilleries, supra, at page 156 (40 S. Ct. 108), Mr. Justice Brandeis, speaking for the court, and noting the fact that the police power was reserved to the States by the Tenth Amendment to the Constitution, said:

"But it is none the less true that, when the United States exerts any of the powers conferred upon it by the Constitution, no valid objection can be based upon the fact that such exercise may be attended by the same incidents which attend the exercise by a state of its police power, or that it may tend to accomplish a similar purpose."

In Everard's Breweries v. Day, supra, at page 560 (44 S. Ct. 631), the court, speaking through Justice Sanford, said:

"It is clear that Congress, under its ex-

press power to enforce by appropriate legislation the prohibition of traffic in intoxicating liquors for beverage purposes, may adopt any eligible and appropriate means to make that prohibition effective. The possible abuse of a power is not an argument against its existence."

Defendant cites in support of his position U. S. v. Beiner et al. (D. C.) 275 F. 704, U. S. v. Dowling (D. C.) 278 F. 630, Hilt v. U. S., 279 F. 421 (C. C. A. Fifth Circuit), and U. S. v. Berger, 9 F.(2d) 167, a recent decision of Judge Thompson, in the District Court for the Western District of Pennsylvania. We have examined these cases with care, and so far as they support, or tend to support, the contentions made, we cannot follow them, as applicable to or controlling in this case.

[3, 4] Third. This brings us to the consideration of the question of the propriety of the District Court's action complained of; that is, the court's jurisdiction and authority, upon the incoming of the plea of guilty, to suspend the imposition or execution of sentence and place the defendant upon probation for the period of four years; and subsequently, after the defendant had served 5 months and 13 days of the probationary period (4 years), to set aside at another term of the court the order of probation, and enter sentence for the full term of 4 years in the penitentiary. The court, in taking the action that it did, at a term subsequent to that at which the plea of guilty was received, and the original period of probation fixed, clearly acted within its discretionary authority and power, under the probation statute. In the enforcement of this act, much latitude must be allowed to the District Judges in affording to defendants the benefits thereof; hence the ordinary rules regarding terms of court cannot be adhered to strictly. Nix v. James (C. C. A.) 7 F.(2d) 590, 592, 593, supra. In this particular case, under the very recent decisions of this court (Strickling v. Walker, Sheriff, 296 F. 337, and Gillespie v. Walker, Sheriff, 296 F. 330), authority existed in any event to pursue the course followed, although at another term, and the defendant's objection in that respect is not well taken.

Fourth. The defendant further urges that he was entitled to a trial upon the question of whether he had violated the conditions of his probation. The question of procedure under the Probation Act is not free from difficulty, especially because of the great latitude conferred upon the District Judges in enforcing the same. Manifestly

many things may be done that ought not to be, and the doing of which would tend to make questionable some of the provisions of the act, because of the far-reaching and unreasonable restraints and embarrassments that might be placed upon the rights of an accused. The act should not, however, be viewed in the light of the unreasonable things that may be done under it, but rather having regard to its general purposes, and the wise and humane things that should be done in its due administration, looking to the amelioration of the condition of the unfortunate in whose behalf it was enacted. The purpose of the act was to give to the federal District Courts a free hand in humanely dealing with criminal classes which come before them, and much discretion, of course, should be allowed, having regard to the offenses charged, and character of the particular offenders, keeping always in view their previous conduct, their afflictions, their age, whether the offense arose from the indiscretions of youth or the infirmities of old age, their sex, and, indeed, anything that would tend to throw light on their behavior, and the motives and intent with which they acted.

[5] It is not necessary that we pass upon the defendant's contention that he was entitled to a hearing upon the question of the breach of the terms of his probation, for it affirmatively appears of record that at the time of the revocation of the probation and imposition of sentence he was present in his own proper person, and the government made it appear by evidence satisfactory to the court that the conditions of the probation had been violated, and no exception appears to have been taken to such action of the court.

[6] Fifth. We have accepted the contention of the government that the court had the right to suspend the imposition, as well as the execution, of the sentence. We cannot but feel that the act is susceptible of this interpretation; but in view of the great discretion placed in the District Courts, and the large numbers of persons throughout the country to be affected by its action in administering this act, the suspension of the imposition of sentence will doubtless be rarely availed of, save in cases making that course especially desirable and humane, by reason of affliction, infirmity, sex, or age of the particular offender. It could not have been the policy of Congress, in enacting the law under consideration, to place any greater number of persons than possible in a state of uncertainty as to their personal lib-

erty, and hence this condition will be greatly simplified, and in keeping with the policy in the enforcement of all criminal laws, to have the period for which one is to be punished definitely fixed and known. This can easily be done by prescribing the same upon the conviction, or incoming of a plea of guilty. The sentence can then be imposed for the time so fixed, with the suspension by probation, or the execution of the sentence, in the discretion of the judge, but in no case for a period longer than five years. The period being once fixed, the terms for which probationers could be held would be well understood, and no question of the right to impose sentence would arise.

[7] The action of the District Court should be affirmed in the criminal case, No. 2470, for the reasons stated, and affirmed in the writ of habeas corpus case, because the positions respecting the constitutional questions raised are not well taken, and also because that proceeding cannot be availed of as an appeal in the criminal case, nor can the same be resorted to, to add to or amplify the record in a way not made in the criminal case, and presented therein.

Affirmed.

McDOWELL, District Judge (concurring). I was not able to concur in the conclusion reached in the majority opinion until I had solved a question which gave me considerable difficulty, and which is not discussed in the foregoing opinion. As the subject is novel, and probably of interest to all federal trial judges, it may be worth while to state the cause of my perplexity and the reason for concurring. At the outset it should be said that I have never thought that any right given the probationer in this case by the federal Constitution has by possibility been infringed. The question with me has never been as to the power of Congress, but as to the intent shown by the Probation Act (43 Stat. 1259).

From the record in the habeas corpus case (2471) it appears that one of the conditions of probation was that the probationer should during probation observe all state and federal criminal laws. It also appears that the reason which induced the trial court to revoke the probation was a belief that the probationer had, after probation was granted, violated some one or more of the state and federal prohibition laws. The petition for habeas corpus asserts, and the return by the marshal admits, that the probationer has never admitted that he had committed any new offense, that he has never

waived trial by jury of such charges, and that he has never had a jury trial thereof.

Even if not always the fact, at least in an overwhelming majority of instances, probation is to the probationer a highly esteemed privilege. It is at least a postponement of execution, a stay, which in many cases may become perpetual. A probationer is during probation at liberty, even if under a more or less mild surveillance, and to a probationer who is objecting thereto a revocation of probation is certainly a deprivation and a loss of a privilege. Too plainly to require discussion, the power to revoke probation, when it exists, like the power to grant probation, is intended to be exercised without the assistance of a jury.

The fact that the conditions of probation are expressly required by the statute to be put in writing, and a copy thereof furnished to each probationer, most clearly implies that probation may not be revoked unless a condition of probation has been broken. The fact that power to revoke probation is expressly given, and the fact that the foregoing restriction on the power is implied, does not seem to me of importance. That which is certainly implied in a statute is as binding as that which is expressed. That the probation statute was not intended to give the courts an arbitrary power of revocation seems a necessary conclusion. Treating as a whole the express power to revoke and the implied restriction, the result is that the statute contains a grant of power to revoke because of a breach of a condition of probation, and does not grant power to revoke merely because a charge has been made that the probationer has broken a condition. If I am right in the belief that the statute does not give power to revoke probation in any case, unless and until there has been a breach of a condition of probation, it was of necessity intended by the lawmakers that some person or some tribunal should have the power to determine the truth of every charge of breach of condition of probation.

Many conditions of probation may properly be prescribed, and every possible condition may properly be put in one or the other of two classes. Obedience to the federal and state criminal laws falls properly into one class of conditions of probation, and all other possible conditions fall into the other class. In respect to this second class, it seems clear enough that the court which granted probation is impliedly given power to decide whether or not the probationer has violated a condition of probation. That such power should be given to such courts, even

if not absolutely necessary, is useful and in accordance with usage. In fact, in respect to the breaches of condition in the second class, the very failure of the statute to indicate some other person or tribunal as having the power is a sufficient reason for holding that the statute impliedly gives the power to the court which had previously granted probation.

However, where the breach of condition charged is the commission of a crime by a probationer who does not confess, and who has not been regularly convicted, the conclusion that the Probation Act gives power to the judge holding the court which granted probation to decide the question is not quite so easily reached. If the charge of crime is justified, such charge usually at least should be, and in regular course will be, tried by the tribunal which has jurisdiction of such charges independent of the probation statute. If the charge is too trivial, or too ill-supported, to justify prosecution in such court, it might properly be ignored by the court which granted probation. In other words, every charge of crime, if of sufficient gravity and if supported by evidence, can be prosecuted in the regularly constituted tribunal, and there can therefore be no absolute necessity that the court which granted probation shall determine for itself the truth of the charge. After conviction in such tribunal the judge holding the court which granted probation can of course revoke the probation or refuse to revoke it, as he thinks proper.

If the judge of the court which granted probation has the power to decide that a probationer has committed a crime, he can so decide in advance of the regular jury trial of such charge; and it is certainly possible that the judge's decision may not correspond with the subsequent verdict. If by the probation statute Congress has given the judge of the court which granted probation power to decide that a crime has been committed, Congress has provided for at least an occasional duplication of effort and of expense. Revoking probation does not excuse the new crime, and a regular trial by jury may and usually will follow.

Again, a decision by the judge of the court which granted probation, made in advance of the regular trial of the criminal charge, might prejudice either the prosecution or the defense on the regular trial of the criminal charge. The fact that probation had been revoked, because of a belief on the part of the judge that the probationer had committed a crime, might, if known, be high-

ly prejudicial to the probationer on his trial on such charge in the criminal court. Likewise a refusal to revoke might prejudice the prosecution.

If the crime charged against the probationer be a federal offense, committed in the district in which he was granted probation, the judge who, in advance of the regular criminal trial, undertakes to determine the guilt or innocence of the probationer could disqualify himself. A judge who has formed, expressed, and acted upon an opinion that the accused is either guilty or innocent of a charge of crime may no longer be qualified to preside at the regular trial before a jury of the same charge. If the charge made against the probationer is a crime against a state law, there is at least danger of a breach of propriety in deciding in advance of a trial in the state court that the probationer either has or has not violated the state law. I do not here refer to the prejudice to the prosecution or to the defendant that might result, but to the seeming want of respect for the state court, shown by what may be an unnecessary decision by a federal court of a charge which is yet to be tried in the state court.

While the question is to me close and difficult of solution, it seems more satisfactory to hold that the above-mentioned dangers and possibilities afford strong reasons for caution in exercising the power of revocation, rather than reasons for denying the existence of the power in any case. Any grant of judicial power, and especially the grant of a new power, is liable to be abused. But such fact affords no sufficient reason for denying that the power has been granted. In many cases it may be judicious for the court which granted probation to refuse to act on any charge of crime against a probationer, unless the probationer admits the charge, or unless he has been regularly and finally convicted after trial by the duly constituted criminal authorities. But at least occasionally the possession by the court which granted probation of the power to speedily and certainly revoke the probation, when the judge holding such court has become satisfied that the probationer has broken a condition of probation by committing a crime, will be of very high value. The majority of probationers are and will be youthful, or at least of less than normal adult intelligence; and to such persons a power that can be very promptly exercised is much more respected and efficacious than a power that can be exercised only after the

(frequently slow) processes of the criminal law have been finally completed.

The purpose of the Probation Act is to put a selected part of those who, lacking self-control, have violated the law, under the strongest inducement to long-continued good behavior. The most serious breach of good behavior would be the commission of crimes; and the inducement to good behavior, furnished by probation and the power to revoke probation, would be much weakened if in such cases revocation must always be delayed and subjected to all the chances of the usual criminal prosecution. As a deterrent of crime and as an incentive to good behavior, power to punish promptly is of very great value. This consideration gives no little support to the belief that Congress intended that the judge holding the court which granted probation should have a discretionary power to revoke probation, without necessarily waiting for action by the criminal courts.

The possibility of an acquittal at the criminal trial of a probationer whose probation has already been revoked may exist in any case. But juries are so frequently influenced by sympathy, or by other improper reasons, that a subsequent acquittal does not necessarily show that the revocation of probation was erroneous; and the power to finally revoke in advance of and independent of the result of a trial of the criminal charge will of itself add greatly to the effectiveness of probation. I purposely do not discuss the effect of an acquittal at the criminal trial on the power to subsequently revoke probation. This question is not here involved, and there may be reasons for holding that the power does not exist in such cases, even though it does exist in the case at bar.

The delicacy of the question I have discussed is shown by the recent decision of the Supreme Court of South Carolina in State v. Renew, 132 S. E. 613, April 7, 1926, reversing State v. Sullivan, 127 S. C. 186, 121 S. E. 47, 52. The South Carolina statute involved in these cases (1 Code Cr. Proc. S. C. 1922 [128] § 5) reads as follows:

"The circuit judges of this state shall have the power and authority, in their discretion, to suspend sentences imposed by them, upon such terms and upon such conditions as in their judgment may be fit and proper: Provided, said power and authority shall not extend to cases of felony."

In the Sullivan Case, Judge Cothran, dissenting, expressed the belief that in all such cases action on a proceeding to revoke probation should be held in abeyance until after the conclusion of the criminal trial. In the Renew Case this position seems to have been concurred in by the four judges who participated.